State *v.* Wilkins.

---

## State *v.* Jonathan Wilkins.

The expression, in an indictment for passing a counterfeit bank bill, that the bill " was made in imitation of, and did then and there purport to be, a bank note, for the sum of five dollars, issued by the President, Directors and Company of the Bank of Cumberland, by and under the authority of the Legislature of the State of Maine, one of the United States of America," is a sufficient averment of the existence of such bank, and that it is an incorporated institution.

The words "*bank bill*" and "*promissory note*," in the fourth section of the statute,—Rev. St. c. 96, § 4,—which provides against the offence of passing counterfeit bank bills, are synonymous; so the words "*bank note*" have the same signification; and an indictment, which charges a respondent with having uttered a counterfeit "*bank note*," is sufficient, within that section.

State *v.* Wilkins.

Under the fourth section of chapter 96 of the Revised Statutes, the *uttering*, *passing* and *giving in payment* a counterfeit bank bill are distinct offences; and an indictment for *uttering* and *passing* such bill, averring the knowledge of the respondent that the bill was counterfeit, is sufficient, though it do not allege that the respondent uttered and passed it *as a true bill.*

The allegation, in an indictment for passing a counterfeit bank bill, that the bill passed " was made in imitation of, and did then and there purport to be, a bank note for the sum of five dollars, issued by the President, Directors and Company of the Bank of Cumberland, by and under the authority of the Legislature of the State of Maine," is merely an allegation that the bill was fictitious, and is not an attempt to set forth the bill according to its legal effect and *purport,* in such way as to lay the foundation for a variance between the allegation and the *terms* of the bill.

It is discretionary with the Supreme Court, after they have adjudged an indictment sufficient upon demurrer, allow the respondent to plead anew, and remand the case to the county court for trial, or not.

INDICTMENT in four counts, the first and third of which were for uttering, passing and giving in payment counterfeit bank bills, and the second and fourth for having in possession such bank bills with intent to pass them.

The first count alleged that the respondent " wittingly, deceit- ' fully and unlawfully did utter, pass and give in payment to one ' Elisha W. Fairbanks, of Mendon in the State of Vermont, one ' certain false, forged and counterfeited bank note, which said note ' was made in imitation of, and did then and there purport to be, a ' bank note for the sum of five dollars, issued by the President, Di- ' rectors and Company of the Bank of Cumberland, by and under ' the authority of the Legislature of the State of Maine, one of the ' United States of America, made payable to S. Beare, or bearer, ' on demand, numbered two hundred and seventy four, and dated ' the first day of September in the year of our Lord one thousand ' eight hundred and thirty five, with the name of S. E. Crocker ' thereto subscribed as President of said bank, and the name of C. ' C. Tobie countersigned thereon as Cashier of said bank, and was ' in the words and figures following, that is to say,

" The State　　　　No. 274　　　　of Maine.
" The President, Directors and Company of the Bank of Cum-
" berland promise to pay Five Dollars to S. Beare, or bearer, on
" demand.

　　　　　　　　　　　　　　　Portland, 1st Sept. 1835.
" C. C. Tobie, Cash'r.　　　　　　　　S. E. Crocker, Pres't,"
' He, the said Wilkins, then and there well knowing the said note to
' be false, forged and counterfeited, as aforesaid, with intent to
' defraud the said Elisha W. Fairbanks, contrary," &c.　Those
parts of the other counts on which any question arose were substan-
tially the same with the count above set forth.

The respondent demurred to the indictment, and the county
court adjudged the indictment sufficient; to which decision the
respondent excepted.

*Hyde & Peck* for respondent.

To bring the offence within the statute, all the facts must be
directly and positively alleged, which constitute the crime, and
which it would be necessary to prove.

1. There is no allegation of the existence of the bank.　The
averment, that the note *"did then and there purport to be a bank note*
*'for the sum of five dollars, issued by the President, Directors and*
*' Company of the bank of Cumberland, by and under the authority*
*' of the legislature of the State of Maine,"* is an allegation of the
*purport* of the bill, and not of the *actual existence,* or incorporation,
of the bank by or under such authority.　If the averment will bear
the other construction, it is bad, as the existence of the bank is
there alleged only by way of recital.　Passing bills upon a fictitious
bank, having no existence, might be a misdemeanor, but not within
the statute ; hence proof of the existence of the bank is always
given on trial.　As the incorporation of a bank is not a public but
a private act, it must be pleaded and proved,—and most clearly in
case of a bank under a foreign jurisdiction.

2. If, upon general principles, the existence of the bank need
not be alleged, yet the indictment is bad.　The statute (ch. 96, §§
3 and 4, p. 434) extends only to banks *"incorporated by the Con-*
*' gress of the United States, or by the legislature of any state or*
　　20

State *v.* Wilkins.

' *territory of the United States.*"    The  court cannot take  judicial  notice that the Cumberland  Bank  was *incorporated by such authority* ; hence it should have been  averred.

3.   It is not alleged that the bill  was passed *as  true.*    The very essence of the crime  is the passing a false, or forged, instrument as genuine, or giving in payment the *false* as *true.*    This defect is not cured by the words " *wittingly,* "  " *wilfully,* "  " *and with intent to defraud.*"   " *Wittingly*  signifies knowingly, unlawfully, without authority ;  and as to the words *deceitfully*  and *with  the intent  to defraud,*  the deceit, or fraud, might consist in something other than passing the instrument as true.   These general words in pleading are inoperative, except to show an  intent, which  must be based on facts previously alleged.

4.   The purport and tenor of the instrument, as alleged, do not agree.    It is alleged that the bill purports to be issued by and under the authority of the legislature of the State of Maine.    The words— " The State of Maine," in the tenor, indicate only the  place of execution, and imply no authority from the State of  Maine.    This defect is fatal.

5.   The crime created by the statute is the uttering, passing, or giving in payment, any " *bank bill or promissory note ;*" the indictment  is for uttering and  giving in payment a " *bank note.*"   The words of the statute in  the  description of the subject matter must be followed.    1 Hale 220.    *Rex* v. *Davis,* Leach 55.    *Rex* v. *Turner,* 1 Mood. C. C. 239.    *Rex* v. *Compton,* 7 C. & P. 139,    [32 E. C. L. 469.]    2 East P. C. 601–2.

*Israel P. Richardson,* state's attorney.

The opinion of the court was delivered by

BENNETT, J.   The county court, upon a demurrer to this indictment, held it sufficient ; and the case comes before this court upon exceptions to such decision.

The demurrant insists, that the indictment is bad for sundry reasons.   It is said, that there is no allegation in it of the existence of the bank.   If this was so, the objection would have been well taken.   The allegation is, that the respondent did pass, &c., one

State *v.* Wilkins.

certain false, forged and counterfeit *bank note*, which said note was made in *imitation* of, and *did purport* to be, a *bank note*, issued by the President, Directors & Co. of the Bank of Cumberland by and under the authority of the Legislature of the State of Maine, one of the United States of America. The statute of 1818, Slade's Ed. 261, provides, that, if any person shall counterfeit, &c., any *bill*, or· *note*, issued ·by the President, Directors &· Co. of the Bank of the United States, or by the Directors of any other bank, *by* or *under* the legislature of any of the United States of America, he shall, on conviction, be confined, &c. In the Revised Statutes, p. 434, the form of the expression is somewhat changed, and prohibits the counterfeiting any *bank bill* or *promissory* note, issued by any banking company, *incorporated* by the Congress of the United States, or by the legislature of any State or Territory of the United States. No doubt, under the Revised Statutes, the Bank must be an incorporated institution, and it must, in substance, be so alleged in the indictment. So I conceive, that, under the statute of 1818, the bill must have been counterfeited upon an incorporated institution, and that the Revised Statutes were not designed to introduce any new rule. The expressions, a *Bank note*, or *bill*, issued *by and under* the authority of the Legislature of one of the United States of America, imply, by necessary implication, that it was issued by an incorporated institution, and consequently such an averment in an indictment must be held sufficient. This indictment is conformable to the precedent furnished by Judge Aikens, in his book of forms, as applicable to the statute of 1818, and which, I believe, was introduced into general use. If the Revised Statutes introduced, in this particular, no new rule of law, then an indictment under the old statute would be good under the Revised Statutes.

It is said, that, as the indictment charges the offence to consist in uttering and giving in payment a certain counterfeit *bank note,* and as the statute creating the offence makes it to consist in uttering and giving in payment any counterfeit *bank bill* or *promissory note*, the offence in the statute is not well described in the indictment. The words of the statute, in the description of the subject matter of the offence, must be substantially followed, it is true, and the of-

fence be brought within all the material words of it. We think that the words *bank bill* or *promissory note*, as used in the statute, are *synonymous*. The words used in the indictment, *bank note*, are also synonymous with *bank bill.* Bank note, bank bill, and promissory note, issued by the directors of a bank incorporated by and under the legislature of this state, mean the same thing. The expression, *bank bill* or *promissory note*, in the statute, is an evident tautology; and had the term, or *bank note*, been also added, it would, none the less, have been a tautology. See *Brown* v. *Commonwealth*, in error, 8 Mass. 59, and also *Commonwealth* v. *Carey*, 2 Pick. 47.

It is farther objected to this indictment, that it is not alleged that the bill was passed as a *true bill.* In an indictment upon a penal statute the prosecutor must set forth every fact, that is necessary to bring the case within the statute. The indictment in this case has four counts; the 1st and 3rd are for *uttering, passing* and *giving in payment.* The 2nd and 4th are for having in possession counterfeit bills with an intention to *utter, pass* and *give in payment.* The statute of 15 Geo. II provided, that, if a person should *utter, or tender in payment*, any false or counterfeit money, knowing the same to be false or counterfeit, he should, on conviction, be subject to certain penalties. In the case of *The King* v *Franks*, 2 Leach Cr. L. 644, the indictment charged the respondent simply with *uttering* a piece of *false* and *counterfeit* money; and it was held that the offence was complete, even though it was uttered as base coin. In that case the indictment did not state the *uttering* to have been in payment, *as* and for a piece of good money; and if it had, the evidence in the case would have rebutted the charge. It was considered, in that case, that, as the statute was in the disjunctive, the *uttering* and *tendering in payment* constituted two independent and distinct acts. So I think our statute, providing against *uttering, passing*, or *giving in payment* any false and counterfeit bill, makes the acts distinct and independent, and that either the *uttering, passing*, or *giving in payment*, would constitute an offence against the statute, provided the respondent had a knowledge that the money was counterfeit.

Whether, if this had been an indictment simply upon the last

State *v.* Wilkins.

clause, that is, for giving in payment a false and counterfeit bank bill, it would have been necessary to have alleged that it was given in payment, *as and for a true bill*, it is not now necessary to decide. In the case *State* v. *Randall*, 2 Aik. 89, we have the form of an indictment like the present, under the statute of 1818; and it was held sufficient. Neither in that statute, nor in the Revised Statutes, is it made a part of the description of the offence, that the counterfeit bill shall have been *uttered, passed,* or *given in payment, as and for a true bill;* and it is unnecessary for us to decide what would have been necessary, if this had been a part of the description of the offence. The offence of disposing and putting away forged bank note was held to be complete, though the person, to whom they were disposed of, was an agent for the bank to detect *utterers,* and applied to the prisoner to purchase forged bank notes, and had them delivered to him as forged notes, for the purpose of disposing of them. Russ. & Ry. C. C. 154.

It is said, also, that the indictment is bad, because there is a repugnancy between the *purport* and *tenor* of the bill, as alleged in the indictment. We think there is no ground for this objection. The indictment set forth the counterfeit bills in their words and figures, as it was proper it should do; and the allegation, that the bill, charged to be forged in each count, was made in *imitation* of, and *did purport* to be, a bank note, issued by the Bank of Cumberland, is nothing more than an allegation that the bill was a fiction, and it is no attempt to set forth the forged bill according to *its purport.* It may be true, that, where the pleader first sets out the bill according to what he claims to be the legal *purport,* and afterwards sets it out according to its *tenor,* and there is a repugnancy, it may be fatal; but that principle does not apply to this indictment.

The result to which the court have come is that the indictment is sufficient.

After the decision of the court was pronounced, the prisoner was permitted to plead over,—the court considering it a matter in their discretion to allow it, or not; and the case was remanded to the county court to be tried upon a plea of not guilty.