### THE STATE OF VERMONT *v.* CHARLES WHEELER.

*Criminal Law.    Indictment.    Variance.    Passing Counterfeit Money.    Supreme Court.*

In an indictment for passing a counterfeit bank bill, in setting out the *tenor* of the bill it was described as signed by *J. M. Thonpson.* The bill offered in evidence was signed by *J. M. Thompson.* *Held,* that the two names were substantially *idem sonans,* and that there was no fatal variance.

The counterfeit bill offered in evidence contained the word "*three*" six times on the margin at the top of the bill, and also close upon the margin the words and figures "*capital stock* $100,000 *secured by pledge of* $100,000 *Pennsylvania* 6 *per cent. bonds.*" The indictment made no mention of these words. *Held,* that the words omitted were no part of the bill, and that there was no variance.

The indictment charged the respondent with passing a counterfeit bank bill of the denomination of three dollars, purporting "to have been issued by the Andover Bank, *a banking company incorporated by the legislature of the commonwealth of Massachusetts,* made payable to E. F. or bearer on demand." *Held,* that the portion in italics was not an allegation of the *purport* of the bill, but of the due incorporation of the banking company, by whom the bill purported to have been issued.

In an indictment in four counts, three for passing counterfeit bank bills, and the fourth for having in possession counterfeit bank bills, with intent to pass the same, the county court instructed the jury that there was no evidence to support either the second or fourth count, and that the respondent could not be convicted thereon. The jury returned a general verdict of guilty. *Held,* that this did not warrant the supreme court to set aside the verdict and grant a new trial.

State *v.* Wheeler.

INDICTMENT. The facts appear sufficiently in the opinion of the court.

*C. N. Davenport,* for the respondent.

*J. D. Bridgman, State's attorney,* for the prosecution.

PECK, J. The indictment in this case is for passing, and having in possession, with intent to pass, certain counterfeit bank bills. The second and third counts, as appears by the exceptions, are for one and the same offence; the only difference between the two counts being, that in the second count the bill is described as No. 4887, and in the third count as No. 4587. The bill produced on trial was numbered 4587 as described in that respect in the third count. The bill described in the fourth count appeared by the proof to be a genuine bill upon a broken bank, and therefore worthless. The court charged the jury that the evidence did not support either the second or fourth count, and directed them to acquit the respondent on those two counts. The questions reserved arise under the first and third counts.

The first count charges the respondent with passing and giving in payment a counterfeit bank bill of the denomination of five dollars, purporting to have been issued by the president, directors, and company of the John Hancock Bank, under the authority of the legislature of the state of Massachusetts, with the name of J. M. Thompson subscribed thereto as president, &c. The count then proceeds to set out the tenor of the bill in words and figures, in the usual form. In the allegation of the purport of the bill the name of J. M. Thompson is correctly stated, but in setting out the tenor of the bill the exceptions show that the respondent's counsel claimed at the trial that in the indictment the word "Thompson" was written by inserting therein the letter "*n*" or the letter "*u*," instead of the letter "*m*." This, the respondent's counsel claimed, constituted a fatal variance between the indictment and the evidence, and objected to the bill as evidence. The court admitted the bill in evidence.

This, the respondent's counsel claims, is error On inspection of

the original indictment we are satisfied that the letter *m* is left out, and the letter *n* inserted in that name. The bill is also referred to, and from that it is clear that the name upon the bill is *Thompson.*

It is necessary in an indictment of this character to set forth the bill or instrument correctly, both in the purport and in the tenor. Where the pleader professes to set out the instrument according to its tenor, he is bound to a strict recital. In relation to significant words, a variation of a letter is not necessarily fatal, if the sense and meaning is preserved, even if it varies the sound. The court in such case have three things by which to determine the legal identity, the *letters or spelling,* the *sound,* and the *sense* or *meaning,* and if the two former are departed from, still the latter is left by which to determine the legal identity. But names are arbitrary, having no such signification or meaning, but only the spelling and sound to identify them, and if both these are departed from by the pleader, the legal identity is gone, as there is nothing left by which to determine it. Hence the rule in relation to names is more strict, so that if, by the change of a letter the sound of the word is substantially changed, the variance is fatal; that is, to avoid an objection for variance in names, the allegation and proof must be, in technical language, *idem sonans.* There is no doubt as to the rule; the principal difficulty is in its application. In some cases it is clear that the change of a letter so changes the sound that the variance is fatal; while in other cases it is equally clear that it is otherwise. In this case it must be confessed that the sound is very slightly changed, but the change is so extremely slight that it can hardly be detected by the ear on the closest attention. We think there is no such substantial difference in the sound as to constitute a fatal variance. A change of the letter *m* to *n,* in many cases that can be supposed, would so materially alter the sound as to constitute a fatal variance, but in this case the change of those letters, substituting the one for the other, in connection with the letter that follows, produces no such substantial variation of sound as to exclude the instrument as evidence. This exception must be overruled. In *State* v. *Bean,* 19 Vt. 530, it was held that *Harriman* and *Heremon,* were *idem*

*sonans,* and the same in legal effect.  In that case the question arose upon an objection to the evidence when the instrument was offered, and the court held that it was properly admitted upon the ground above stated.  If that case was put upon the true ground, it is an authority fully sustaining the ruling of the county court on this point in this case.  In that case, however, the name was correctly set out in the allegation of the tenor of the instrument, and it was only in the allegation of the *purport* that it was claimed to have been misdescribed.  In such case it may be questionable whether an objection to the evidence can properly be taken, and whether the only way to reach the defect in the indictment is not by demurrer or motion in arrest, on the ground that the allegation of the *purport* and of the *tenor* are repugnant.  But the court without alluding to this question, treated it as a question of variance, and held that the two names were legally the same.

The next question arises on the admission of evidence under the third count.  That count charges the respondent with passing a counterfeit bill of the Andover bank.  The bill admitted in evidence was objected on the ground that it contained the word " three " six times on the margin at the top of the bill, and also on the same bill, close upon the margin, the words and figures, " *Capital stock* $100,000, *secured by pledge of* $100,000 *Pennsylvania* 6 *per cent. bonds,*" which was not noticed in the description of the bill in the indictment.  The court overruled this objection and admitted the bill as evidence.  This decision was correct.  What was thus omitted constituted no part of the bill, and had no effect to add to or qualify the instrument as set forth, and was no more necessary to be set out than the ornamental part of the bill.

Another objection to both the John Hancock Bank bill and the Andover Bank bill was made by the respondent's counsel, and overruled by the county court, that is, that the indictment in alleging the purport of the bills, alleges that they purport to have been issued by banks incorporated by the legislature of Massachusetts, or to have been issued by and under the authority of said legislature, and that no such purport appeared on the face of the bills.  It is true that the bills have no such purport, and it is

true that if the indictment alleges that the bills purported to have been so issued, it must so appear from the bills, and if it does not so appear, extrinsic evidence can not be resorted to to supply the defect, in proof of that allegation. The only question then is as to the construction of this allegation in the indictment, whether it is to be construed as claimed by the respondent's counsel, as an allegation of the purport of the bill, or as claimed by the counsel for the state, as an allegation, not of the purport of the bill, but an allegation of the fact of the actual existence or incorporation of such bank by or under the authority of legis-lature. If this were a new question it would not be free from doubt, and in fact it would be difficult perhaps to avoid the con-struction contended for by the respondent's counsel, since what immediately precedes, and what immediately follows, the allega-tion in question, confessedly refers to the purport of the bill. But in *State* v. *Wilkins,* 17 Vt. 151, the question was directly presented on a demurrer to an indictment in substance like the present. The objection taken to the indictment in that case was, that it must, in order to come within the statute, contain an alle-gation of the fact of the incorporation or existence of the bank by or under the authority of the state, and that as the allegation in reference to the bank was only an allegation of the purport of the bill, and not of the actual existence or incorporation of the bank, the indictment was defective. The court decided that unless the allegation were construed to be an allegation of the existence of an incorporated bank, the indictment would be bad, but held the indictment good on the ground that such was the construction. The court held the indictment good in that case, partly upon the ground that such form had been long in use in this state under the present statute, and a previous statute sub-stantially the same in its provisions. That case must govern this, as there is no material difference between that indictment and this, in that particular. The allegation in question not being an allegation of the purport of the bill, there was no vari-ance in this respect, and this objection was properly overruled.

The remaining objection is, that the verdict of guilty is general, instead of being limited to the first and third counts, when the case shows that there was no legal evidence in support of the

State *v.* Wheeler.

second and fourth counts.    It would,  perhaps,  have been more proper for  the jury  to have returned  a  verdict of guilty on the first and third counts, and not guilty  as to the second  and fourth counts ; at least there should have been a verdict of not guilty on the fourth count, as that is for a distinct offence, not charged  in either  of the  other counts ;  but however  this may be, we see nothing in the alleged error  that requires  or warrants this court in setting aside the verdict and granting  a new trial.    There is no error in any decision of  the county court, or in any instruc‑ tions  to the  jury,  or in  any omission to instruct them.    The county court decided that there was no evidence to support either the  second  or  fourth count, and instructed  the  jury that the respondent  could not  be  convicted  on  either  of these counts. Upon the whole record the verdict, so far as it affects the respon‑ dent, must be taken to be a verdict of guilty only on the first and third counts.    It can not  be  said that  the respondent is in dan‑ ger of  a more severe sentence than he would be exposed to if the jury had formally acquitted him on the second and fourth counts, because in  passing sentence this court must take general  notice that  he is not guilty on those two  counts, and that he stands convicted only upon the first and third counts.    If the respondent could  in any way be [prejudiced  by  the  verdict being general, this court, on motion, or in some way, would correct the alleged error  or informality, as was done in *State* v. *Roe*, 12 Vt. 93.

Exceptions  overruled.