### State *v.* George W. Smith.

May Term, 1900.

Present : Taft, C. J., Rowell, Tyler, Munson, Start and Thompson, JJ.

Opinion filed August 29, 1900.

*Impaneling the jury—Preliminary examination—Business relations with contemplated witness—Discretion of trial court*—In impaneling the jury in a criminal case, it was within the discretion of the court not to permit the respondent to inquire of the jurors as to whether they were clients of an attorney who was to be improved by the State as a witness.

*Impaneling the jury—Preliminary examination—Remote prejudice or bias—Discretion of trial court*—In a prosecution against a deputy sheriff for bribery touching the performance of his duties under the prohibitory

law, it was within the discretion of the County Court to refuse the respondent permission to inquire of the jurors as to their views of that law and as to the relative degree of fidelity which they would require in the administration of that law.

*Dependent evidence—Evidence affecting the probability of a fact which other testimony tends to show*—In connection with evidence of declarations of a respondent, tending to show that at the time of the declarations he had in his possession a warrant against a certain person ready to serve, evidence tending to show that on the day in question a complaint with an unsigned warrant against such person had been put into his hands in behalf of the proper state's attorney, with the request that the respondent get the warrant signed by the proper authority, was admissible as bearing upon the probability of its being so signed at the time of the declarations.

*Evidence—Declarations of party as admissions—Subsidiary evidence—Tendency and sufficiency of evidence.*—Evidence tending to show declarations of a respondent that he had a certain warrant ready to serve, together with evidence that such a warrant as he claimed to have, filled out but not signed, had on the day in question been put into his hands, in behalf of a proper prosecuting officer, with the request that the respondent get it signed by a proper authority named, was evidence tending to show the existence, in the possession of the respondent at the time of the declarations, of such a warrant as he then claimed to have, and was sufficient to be submitted to the jury upon that point.

*Evidence—Proof of acceptance of money*—Proof that one assumed control of money passed over into his possession as a gift by another, and that the one to whom it was so passed over understood at the time that he accepted it, and that the money had thereby passed from the control of such other person into his control, shows an acceptance of the money.

*Criminal law—Evidence—Silence under accusation express or implied*—The evidence tending to show that the respondent was surprised with money on a table before him, in a manner conveying an accusation of crime in taking it, the fact that he did not then deny that he had accepted it was proper for the jury to consider upon the question of his guilt.

*Criminal law—Evidence—Showing steps preliminary to consummation of crime —Solicitation of a bribe—Negotiations culminating in bribery*—In connection with evidence tending· to show that a bribe was accepted by the respondent on a certain day, evidence of negotiations with reference to the bribe preliminary thereto and leading up to it was admissible.

*Criminal law—Evidence—Conduct tending to show guilt*—The question being whether money, found on a table before the respondent at a time when

he was surprised, had been received by him as a bribe, testimony to the effect that the respondent said to those who had so surprised him when shortly left alone with them, " Now we are all alone, can't we fix this up some way ?" had a legal tendency to show the respondent's guilt.

*Criminal law—Practice—Election between counts charging same offense—Trial court may or may not compel election*—When an indictment is in two counts for the same offense, it is not a legal right of the respondent to have the state elect at the close of the evidence upon which count it will rely. The trial court may in its discretion grant or deny a motion to have such election compelled.

*Charge—Weight of evidence for jury, but legal tendency for court*—It is for the jury to determine the weight of evidence in proving or disproving the issue on trial, but it is for the court to instruct them as to its legal tendency.

*Charge—General exception taken to be to the law involved and not to an inference of fact*—A general exception to an instruction may properly be taken to have been to the law involved therein, and not to an inference of fact from the evidence made in stating the particular phase of the case to the jury.

*Charge—Recital of evidence—Substantial correctness—Leaving evidence and its weight to memory and judgment of the jury*—An exception to a claimed misstatement of testimony by the court in the course of its charge to the jury was not sustained, it appearing from the record that the testimony in question was stated with substantial correctness, and that the jury were cautioned to rely on their own recollection of the evidence, and that the weight of the testimony was left to the determination of the jury.

*Charge—Appropriate statement of unquestioned law*—The evidence of the State tended to show that a sheriff and an attorney surprised the respondent with money before him which he had received as a bribe, and that the respondent inquired of the sheriff and the attorney if the matter couldn't be " fixed up," and that one of them replied that he didn't know of any way to compromise crime. In commenting upon this conversation it was proper for the court to tell the jury that the compounding of the bribery, if that offense had been committed, would be a crime.

*Charge—Criminal law—Definition of bribery—General definition and concrete instruction taken together*—In charging the jury in a prosecution under V. S. 5086, the court defined bribery by saying : " Bribery is the receiving or offering any undue reward, by or to any person whomsoever, whose ordinary business or profession relates to the administration of

public justice, in order to influence his behavior in office, and to incline him to act contrary to his duty and the known rules of honesty and integrity." This definition includes the element of a corrupt intention, and an understanding that the person accepting the thing offered shall be influenced thereby in his official acts, and this definition and a further explicit instruction to the effect that the crime charged was not made out unless such corrupt intent and such understanding were found beyond a reasonable doubt, must have prevented the jury from finding the respondent guilty on less than the requisite proof.

*Charge—Criminal law—Bribery—Substantial compliance with respondent's requests.*—An instruction to the jury to the effect that to convict the respondent of bribery they must be satisfied beyond any reasonable doubt that the respondent had a warrant to search the premises of the person from whom it was alleged that he took the bribe, and that he accepted money from her to influence his action in the matter of the service of the warrant, and that he accepted the money with the felonious intent to be corruptly influenced thereby in the discharge of his official duties in serving the warrant, was a full compliance with certain of the respondent's requests the substance of which is stated in the opinion.

*Charge—Criminal law—Bribery—Requests not applicable to the evidence—Abstract requests*—The respondent, a deputy sheriff, having solicited a bribe from one B which B decided to give, arrangements, to which B was a party, were made in consequence of which the consummation of the crime was witnessed by others and the respondent arrested. In this there was no conspiracy to decoy or lure the respondent into crime, and requests founded upon the theory that there was, dealt only with abstract questions and were properly denied.

*Arrest of judgment—One count good and verdict general.*—When the evidence tends to support both counts of an indictment drawn in two counts, one of which is good, and there is a general verdict of guilty, it is understood that the jury find the respondent guilty on both counts, and judgment will not be arrested for the insufficiency of one count.

INDICTMENT in two counts under V. S. 5086 for bribery. Trial by jury, Washington County, September Term, 1899, *Watson*, J., presiding. Verdict, guilty. Judgment on verdict. The respondent excepted.

The first count in the indictment charged, in substance, that on the 8th day of July, 1899, at Montpelier, in Washington

County, the respondent, a deputy sheriff, had a legal warrant duly issued from the City Court of said Montpelier, commanding him to arrest one Clementina Bianchi on a criminal charge set forth in a complaint of the state's attorney for said county, and that the respondent not regarding his duty in that behalf and the command of said court, did corruptly, wilfully and feloniously accept a gift and gratuity of money, of the value of seventy-five dollars, with the understanding that he would be influenced thereby in his said official act of serving said warrant and arresting the said Clementina Bianchi, and with the understanding that by reason of said gift and gratuity he would not serve said warrant and would not arrest the said Clementina Bianchi as commanded by said warrant.

The second count of the indictment charged in substance that on the 8th day of July, 1899, at Montpelier, in Washington County, the respondent, a deputy sheriff, did wilfully, corruptly and feloniously accept a gift and gratuity of the value of seventy-five dollars, from one Clementina Bianchi, of said Montpelier, with the understanding that by reason of the said gift and gratuity he would be influenced in his official acts as such deputy sheriff in serving warrants and other process upon the said Clementina Bianchi and of serving search warrants in the house of said Clementina Bianchi in said Montpelier.

In the impaneling of the jury the respondent's counsel asked leave to examine the jurors as to whether any of them were clients of William A. Lord, an attorney who was to be one of the witnesses in the case. Such examination was not permitted.

The respondent's counsel also asked leave to examine the jurors as to their belief in the prohibitory liquor law, and as to whether they would require a different degree of faithfulness in the discharge of a duty under that law than they would in the execution of duty under any other law. Such examination was not permitted.

The evidence on the part of the State tended to show that on July 4, 1899, one M. M. Gordon, acting for the state's attorney

for Washington County, handed to the respondent two complaints signed by said state's attorney, one of which, on due allegations, prayed for a warrant to issue from the City Court of Montpelier directing search for intoxicating liquor to be made on the premises of the said Bianchi in Montpelier, and the other of which charged the said Bianchi with owning, keeping and possessing intoxicating liquor with intent to dispose of the same in violation of law. The evidence of the State further tended to show that unsigned warrants, such as the complaints respectively called for, were attached to these complaints, and that, in so delivering the complaints to the respondent, the said Gordon asked the respondent to have the warrants signed by the judge of the City Court of Montpelier, and to search the said premises of the said Bianchi. The evidence on the part of the State further tended to show that on the same 4th day of July the respondent went to the house of the said Bianchi and told her that he had with him a search warrant for the search of her house, to see if he could find any liquor, that he had a paper all ready to search the house, and that upon being asked to show his warrant he produced as such warrant a paper having the name of the said Bianchi upon it.

The respondent claimed that the warrants referred to were never signed, and introduced in evidence complaints with unsigned warrants attached, which he claimed to be the papers delivered to him by said Gordon as aforesaid. The substance of the testimony of Mr. Gordon as to the identity of these papers is set out in the opinion.

A narrative of what the evidence of the State tended to show as to the circumstances of the bribery found by the jury is as follows :

When, as above stated, the respondent went to the house of Mrs. Bianchi on July 4th and told her that he had a search warrant to search her premises for intoxicating liquor and showed a paper which he claimed was such warrant, he told Mrs. Bianchi that if she would pay him one hundred dollars he would not

search the house. Mrs. Bianchi asked for what purpose she had to pay him that money, and he replied, in substance, that he had ten or fifteen witnesses who had been up to her house to drink, and that the best thing was for her to pay the money; that he had come to serve the warrant and take her away if she didn't pay it, and that, if she settled with him for the one hundred dollars, he could save her two hundred or three hundred dollars the next time.

Mrs. Bianchi did not then agree to pay, but told the respondent that she couldn't pay then and that he would have to wait a few days. On the 7th of the same month the respondent again went to the house of Mrs. Bianchi, and again referred to the matter of the payment of the money and was told by her that she had not the money ready, and that he would have to wait until the next day or the day after, whereupon the respondent went away.

In the meantime Mrs. Bianchi had consulted with William A. Lord, an attorney at law, and under his advice and by his direction, arrangements were made such that Mr. Lord and Charles C. Graves, sheriff of Washington County, went to the house of Mrs. Bianchi on the next day, the 8th of July, at about one o'clock in the afternoon and remained there until about six o'clock. The respondent not coming during that time, Mr. Lord and Sheriff Graves made arrangements for a son of Mrs. Bianchi to go to the respondent and tell him that if he wanted to see Mrs. Bianchi he had better come that evening, as she was going away the next day.

The son acted accordingly, and the respondent, the same afternoon or evening, went to the house of Mrs. Bianchi and met her in the sitting room of said house. Mrs. Bianchi opened the conversation about the money by asking the respondent if she had got to pay him that hundred dollars, and he replied: " Why, no, you haven't got to pay it to me, there is no way I can compel you to pay it to me, but you know, as I told you the other day, there are other matters pending—those witnesses,—and if you don't

pay me it will cost you a good deal more, and it will be a great deal better for you if you pay it to me."

Mrs. Bianchi then said: "Well, now if I pay you this hundred dollars, what do I get for it?" and the respondent replied: "Well, this matter—these cases—this pending case—that ends that, and then you will get protection in the future. If there are any warrants out against you in any way, I am in a situation to know it, and you will be informed of it and you will get protection." At this point the respondent asked if there was any one in the back room, referring to an adjoining room over the door-way of which there was only a curtain. Mrs. Bianchi replied, "no," and then spoke of her being poor, and asked the respondent if he couldn't take $75, if that wouldn't settle it. The respondent replied: "Well, this is pretty—scaly business for me, but I guess I can fix it up with those other people. You understand that I am not to have this money; I can fix it up with those other people. Yes, I will take $75." Thereupon Mrs. Bianchi counted out the sum of $75 in money, counting aloud, and put the money on a small centre table up to which the respondent was then sitting, putting the money close to the edge of the table, next to and directly in front of the respondent; the respondent said either "I thank you," or "I am much obliged," and added, "That will settle the matter."

During this conversation and these proceedings, Sheriff Graves and Mr. Lord had been secreted in the adjoining room referred to by the respondent in his inquiry of Mrs. Bianchi, and they now came into the room where the respondent was and the sheriff demanded and took the money and arrested the respondent. Shortly after, the sheriff, Mr. Lord and the respondent were left alone in the room, and the respondent then said to Mr. Lord and the sheriff: "Now we are all alone, there is nobody here, and can't we fix this up some way?" The sheriff replied, "George, there has been too much fixing up, and I don't know of any way;" and Mr. Lord said that he didn't know of any way to compromise the crime.

There was evidence tending to show that the course of conversation and conduct on the part of Mrs. Bianchi, at the time of her interview with the respondent last recited, was generally, but not particularly, in pursuance of a plan that had been formed by Mr. Lord and Sheriff Graves and communicated to Mrs. Bianchi, and that she was told by the sheriff that the respondent should not take the money from the house.

When the State rested its case, the respondent moved the court to direct the State to elect upon which count in the indictment it would rely for conviction. The motion was overruled.

The respondent moved the court to instruct the jury to return a verdict of not guilty, on the ground that the State had failed to introduce any evidence tending to support the indictment. This motion was also denied.

Questions were saved by the respondent upon the denial of requests to charge, and in respect to the charge as given, all of which so far as they were relied on in the Supreme Court sufficiently appear from the opinion.

The question whether the respondent had a warrant properly signed at the time made material by the evidence was submitted to the jury and no exception was taken to the charge in that regard.

After verdict and before judgment the respondent moved in arrest of judgment. This motion was overruled.

*Richard A. Hoar,* State's Attorney, for the State.

*H. William Scott* for the respondent.

THOMPSON, J. I. It was not error for the trial court not to permit the respondent to examine jurors as to whether they were clients of W. A. Lord who was to be improved as a witness. Whether they were his clients or not in no way affected their competency as jurors so far as disclosed by the record. It was clearly within the discretion of the court to permit or refuse the inquiry. Nor was it error for the court not to permit the respondent to examine the jurors "as to their belief in the prohibi-

tory law and as to whether they would require a different degree of faithfulness in the discharge of a duty under that law than they would in the execution of duty under any other law or process." Such inquiry could have no tendency to determine the question whether the jurors were legally qualified to try the respondent for the crime of bribery with which he was charged. The refusal of the inquiry was clearly within the discretion of the court and so far as the record shows such discretion was properly exercised. 1 Thomp. on Tr., secs. 73, 101; *Com.* v. *Buzell,* 16 Pick. 154; *State* v. *Flint,* 60 Vt. 314; Thomp. and Merriam on Juries, secs. 193 and 245, (6).

II.   It was a material question whether the respondent had in his possession a complaint and properly signed warrant against Mrs. Bianchi at the time he took the alleged bribe from her and during the negotiations leading up to it. When the complaint and warrant were delivered to him July 4, 1899, the warrant was not signed, and against his exception, the State was permitted to show by the witness, Gordon, that at the time of such delivery, he requested the respondent to have the warrant signed by the clerk of the City Court of Montpelier. Gordon was the clerk of the state's attorney, and in what he did, acted for him. The subsequent declarations of the respondent put in evidence tended to show that he had such a warrant properly signed at the time in question. This testimony of Gordon tended to show how the respondent came to have the warrant and in connection with his declarations bore upon the probability of its being properly signed. Hence it was not error to admit it.

III.   The bribe was taken by the respondent from Mrs. Bianchi July 8, 1899. Subject to the exception of the respondent, the State was permitted to introduce evidence tending to prove that he went to the house of Mrs. Bianchi July 4, 1899, and then and there informed her that he had in his possession a search warrant to search her premises for the purpose of finding intoxicating liquor therein kept in violation of law, and that he then and there entered into negotiations with her to pay him $100

not to serve the warrant, and that when he left her house on that occasion the matter of such payment was left open for her consideration.

The specific ground of this exception was that what transpired between Mrs. Bianchi and the respondent July 4, was not connected with the transaction of July 8. But this contention is contrary to the facts of the case. The evidence tended to show that the negotiations of the respondent with Mrs. Bianchi for the payment of the bribe were resumed July 7, and finally consummated in what occurred July 8, when a bribe of $75 was finally paid him by her and accepted by him. What occurred between them July 4, and from thence on until the money was paid July 8, was part of the transaction, and together constituted it. It is always permissible to show the various steps taken by the accused in committing the crime with which he is charged.

IV. The two counts in the indictment were for one and the same offence. The respondent excepted to the refusal of the trial court to compel the State to elect upon which count it would rely for conviction. It was clearly within the discretion of the court to grant or deny this motion. Its action was in accord with the established practice of this State. 1 Bish. Cr. Proc. (1st ed.) secs. 205 and 208.

VI. At the time in question, the respondent was a deputy sheriff, and in what he did in respect to the warrant against Mrs. Bianchi, he was acting as such deputy sheriff.

In charging the jury the court in speaking of bribery, among other things said : "Bribery is the receiving or offering any undue reward, by or to any person whomsoever, whose ordinary business or profession relates to the administration of public justice, in order to influence his behavior in the office, and to incline him to act contrary to his duty and the known rules of honesty and integrity," to which the respondent excepted. Vermont Statutes, sec. 5086, under which the respondent was indicted, provides that "An executive, legislative or judicial officer, who corruptly accepts a gift or gratuity, or a promise to make a gift or to

do an act beneficial to such officer, with the understanding that he will be influenced thereby in any official act, shall forfeit his office, be forever disqualified to hold any public office, trust or appointment under the State, and be imprisoned in the state prison not more than ten years, or fined not more than one thousand dollars." The respondent contends that the definition of bribery given by the court was erroneous, because it does not state that the gift or gratuity must be accepted with a corrupt intent and with the understanding that the party accepting the same will be influenced thereby in an official act, and that these are essential elements of the offence under the statute. The definition used by the court is that given in Bouvier's Law Dictionary and is supported by authority. 1 Russ. on Crimes *154; 2 Bish. Cr. Law (4th ed.) sec. 95. It includes corrupt intention, and the acceptance of the gift or gratuity with the understanding that the party accepting it shall thereby be influenced in his official acts. The court further instructed the jury in substance that, in order to convict, they must be satisfied beyond a reasonable doubt that the respondent received the money with the corrupt intent and with the understanding that he should be corruptly influenced thereby in his official acts as such deputy sheriff. The charge on this point was so explicit that the jury could not have been misled by it into finding the respondent guilty on less proof than required by V. S., sec. 5086. This exception is not sustained.

VII. While instructing the jury, the court, referring to the testimony of Gordon in respect to a complaint and blank warrant produced by the respondent on trial, said, "that he thinks the complaint and blank warrant shown him upon the stand was the one that he made out and handed to this respondent for that purpose. He says he is not positive of that." To this the respondent excepted and now contends that it was a misstatement of Gordon's testimony not cured by the further instruction to the jury that they were to take the testimony as they remembered it and not as the court stated it, as it might be mistaken about it.

When interrogated as to the identity of the blank warrant, Gordon first said that he did not know whether or not it was the one he gave the respondent July 4; upon further inquiry he said "I think that is the one—I am satisfied now." Q. "You are satisfied now?" Ans. "It is my judgment that it is the one, but I wouldn't be positive." Again, a few questions later, he said, "I think it is. I am satisfied that it is." Nowhere in the testimony was he more positive in regard to the identity of the paper in question. Taken as a whole, the court correctly stated to the jury the legal tendency of this evidence, and this exception cannot avail the respondent, as the weight of the testimony was left to the determination of the jury.

VIII. The respondent excepted to the charge of the court as to what would constitute an acceptance by the respondent of the money claimed to have been paid him by Mrs. Bianchi as a bribe. The instruction was in substance that, if she paid him the money and passed it from her control to his, and he assumed control of it, understanding at the same time that he accepted it, and that it thereby had passed from her control into his, it would constitute an acceptance by him. In this there was no error. The evidence tended to show that he accepted and assumed control of the money.

IX. The conduct of the respondent, when surprised by Sheriff Graves and W. A. Lord, with the money on the table before him, and the fact that he did not then deny having taken it, was in evidence, and the court properly charged the jury that it bore upon the question of the acceptance of the money by him. The exception to this part of the charge was general and the court had a right to understand that the exception was to the law involved in the instruction, and not to the language used in narrating the occurrence to the jury. Hence this exception cannot avail the respondent, and it is not necessary to decide whether the court made an improper inference from the evidence in stating this phase of the case to the jury.

X. Shortly after the respondent was thus surprised by Graves and Lord, they were left alone in the room with him, and he then said to them, "Now we are all alone, there is nobody here, and can't we fix this up some way;" and Graves replied, "George, there has been too much fixing up, and I don't know of any way;" and Lord replied that he didn't know of any way to compromise crime. The court charged the jury that what the respondent thus said was evidence tending to prove his guilt, to which he excepted. The respondent now contends that this instruction was erroneous because it was for the jury to say whether this evidence tended to show guilt. It is for the court to instruct the jury as to the legal tendency of evidence and for the jury to determine its weight in proving or disproving the issue on trial. The evidence in question clearly tended to prove the guilt of the accused, and the instruction was correct.

Had Lord and Graves taken money, or a gratuity or reward, or an engagement therefor, upon an agreement or understanding, express or implied, to compound or conceal the crime which the respondent had committed, they would have become guilty of the crime of compounding felony, as the respondent's offence is a felony. V. S. secs. 5165, 5166. It was not error for the court to say to the jury that if Lord, Graves and the respondent had, in fact, thus fixed up the crime, hushed it up by a division of the money or in any other way, they would all of them have committed a crime by so doing. The court stated the law correctly, and it is not contended otherwise. *State* v. *Fournier and Cox,* 68 Vt. 271. The fact that the respondent thus proposed the commission of another felony to conceal the one already committed by him, bore upon the weight of this evidence and was proper for the jury to consider.

XII. After verdict and before judgment, the respondent moved in arrest of judgment, which was denied, and to this ruling he excepted. The only ground now urged in support of that motion is that the second count is insufficient. The evidence tended to support both counts of the indictment. No question

is made but that the first count is good. The verdict was general. The verdict being general, it is to be understood that the jury found the respondent guilty on all the counts. In such case, the rule is that if any count is sufficient, judgment will not be arrested. *State* v. *Downer,* 8 Vt. 425; *State* v. *Davidson,* 12 Vt. 303; *State* v. *Hooker,* 17 Vt. 669; *State* v. *Bean,* 19 Vt. 530; *State* v. *Bugbee,* 22 Vt. 32; *State* v. *Wheeler,* 35 Vt. 265; *State* v. *Ward,* 61 Vt. 194; 2 Ency. Pl. and Pr. 801; *Com.* v. *Holmes,* 17 Mass. 335. The motion in arrest of judgment was, therefore, properly overruled.

The above opinion was written by *Thompson,* J., but the Court were not agreed in reference to points V and XI, as written by him, and since his death the following has been agreed to in respect thereto. Therefore,

PER CURIAM. V. The respondent insists that the court should have sustained the motion for a verdict, for that "the evidence does not substantiate the first count in that it was not shown that the respondent had a warrant." There was testimony tending to show that fact, viz., that of M. M. Gordon, who testified that he gave him an unsigned one with directions to procure the signature of the proper authority to it, and testimony tending to show the respondent's declarations to Mrs. Bianchi, that he had a warrant to search her premises. This was testimony tending to show the existence of such a warrant in the possession of the respondent. The motion was properly overruled.

XI. (*a*) The respondent presented ten requests for instructions. Numbers 1, 8 and 9 are not in the record and are therefore waived. The substance of the requests, numbered 2, 3, 4, 5, and 10, is that the jury must be told that in order to convict they must find that at the time when, etc., the respondent had a legal warrant, duly issued by competent authority, which it was his duty to serve and return as therein commanded; that he accepted and received from one Bianchi the $75 as a gift in consideration, and with the understanding between them, that he

would be influenced thereby to neglect his official duty and not serve the warrant and that he was so influenced. In response to these requests, the jury were told that they must be satisfied beyond any reasonable doubt that the respondent had a warrant to search Mrs. Bianchi's premises, that he accepted the money, the $75, and that it passed into his control to influence his action as an officer in the matter of the service of the warrant, and that he accepted the money with the felonious intent to be corruptly influenced thereby in the discharge of his official duties in serving the warrant. This was a full compliance with the requests.

(*b*) The testimony did not require a compliance with the sixth and seventh requests. There was no testimony in the case tending to show that the transaction was a decoy, nor that Bianchi, Lord, and Graves entered into a conspiracy to cause the respondent to commit the crime. He was not lured into a net or snare. He, himself, set the trap and it does not relieve him from the effect of his crime, that the audience that witnessed its springing was larger than he anticipated and had foreknowledge of the scene to be witnessed. The questions involved in these requests were abstract ones, and were therefore properly ignored.

*Judgment that there is no error in the proceedings of the County Court and that the respondent take nothing by his exceptions. Let sentence be pronounced and execution done.*