## Case No. 15,861.

### UNITED STATES v. NELSON.

[1 Abb. (U. S.) 135.] [1]

District Court, W. D. Michigan. Oct. Term, 1867.

#### COUNTERFEITING—SELLING SPURIOUS NOTES.

1. Under a statute which punishes one who shall "utter" or "pass" spurious notes, knowing them to be such, with intent to defraud, and which does not in terms require that they be uttered as true or genuine (Act June 30, 1864; 13 Stat. 221, § 10), a defendant may be convicted of uttering or passing, upon proof that he sold and delivered the notes as spurious notes to another person with intent that they should be passed upon the public as genuine.

[Cited in State v. Painter, 67 Mo. 87. Distinguished in State v. Watson, 65 Mo. 120.]

2. The words "uttering" and "passing," used of notes, do not necessarily import that they are transferred as genuine; the terms include any delivery of a note to another for value, with intent that it shall be put into circulation as money.

3. The fact that other provisions of statute exist which expressly provide a punishment for selling spurious notes, does not prevent convicting a defendant under an indictment for passing, uttering, and publishing such notes, upon proof that he sold them as spurious, with intent that the purchaser should cause them to be put in circulation as genuine.

Motion for a new trial upon an indictment.

John T. Holmes and L. Patterson, for the motion.

A. D. Griswold, Dist. Atty., and E. S. Eggleston, for the Government.

WITHEY, District Judge. The respondent, Theodore Nelson, was indicted in May last, and tried at the present October term on a charge of passing, uttering, and publish-

1 [Reported by Benjamin Vaughan Abbott, Esq., and here reprinted by permission.]

ing a counterfeit United States fractional note with intent to defraud the United States. The trial consumed ten days, and resulted in a verdict of guilty.

At the coming in of the verdict, a motion was made for a new trial. on the ground of evidence improperly admitted. The proof was, that a person employed by the government officials, as a detective for the purpose, applied to Nelson for counterfeit money, to be, by the detective, put in circulation.

Negotiations were had between them, and resulted in Nelson selling to Mitchell, the detective, four hundred and ten dollars of spurious United States notes, for which he received in good money and a promissory note, one hundred and thirty-three dollars.

When the testimony was offered objection was made, that on a charge for passing, proof of selling was not admissible. The objection was overruled. and the testimony admitted. It is this ruling that forms the basis of the motion for a new trial.

It is urged by learned counsel in behalf of the respondent. that it is no offense, under the act of June 30, 1864, to utter, pass, and publish counterfeit notes as and for spurious; that the offense charged is committed only when the notes are passed, uttered, or published as true; that the words "pass." "utter," "publish," import "as true;" that to pass is to put into circulation, as Worcester defines "pass," and therefore to dispose of false notes as and for spurious is not passing. —i. e., is not putting them into circulation.

It is said that congress has by another statute, viz: the act of February 5, 1867 [14 Stat. 383]. created the offense of selling. under which Nelson might and should have been indicted; hence selling spurious notes is a distinct offense for which there can be no conviction under a charge of having passed, uttered, and published; that the charge should have been for selling.

It is true, that it has been held that uttering is a declaration that the note is good, and that to offer it as genuine is an uttering—that to constitute an uttering there must be an intent to pass the note as good. U. S. v. Mitchell [Case No. 15.787], and cases there cited.

But what is the statute under which the indictment is found, and what its meaning? The act of June 30, 1864. defines the offense to be, "to utter, pass, publish, or sell counterfeit United States notes, knowing them to be such. with intent to deceive or defraud." There is an omission of the words "as true or genuine." or any equivalent words.

Whatever reason may have existed in the mind of the pleader who drafted the indictment for omitting to charge the respondent with having sold the notes, is not important to know. The single question which I find it necessary to determine is. whether. under the statute last referred to. any delivery of a spurious note to another for value, for the object or purpose of being passed or put into circulation as and for money, is a passing within the meaning of the act of congress.

Mr. Justice Baldwin, in the case referred to, says: "The note is uttered when it is delivered for the purpose of being passed. When put off it is passed." In the case of State v. Wilkins, 17 Vt. 151, the indictment charged the defendant with having "uttered, passed, and given in payment one certain false, forged, and counterfeited bank note, with intent to defraud;" and the supreme court say: "It is objected to this indictment that it is not alleged that the bill was passed as a true bill." The court also remark, the statute 15 Geo. II. provided "that if a person should utter or tender in payment any false or counterfeit money, knowing the same to be false or counterfeit, he should on conviction be subject to certain penalties." Under this statute. in the case of Rex v. Franks, 2 Leach. 644, the indictment charged the respondent simply with uttering a piece of false and counterfeit money, and it was held that the offense was complete, even though it was uttered as base coin. In that case the indictment did not state the uttering to have been in payment as and for a piece of good money, and if it had, the evidence in the case would have rebutted the charge. The court further on say, neither in the statute of 1818, nor in the Revised Statutes of Vermont, is it made a part of the description of the offense that the counterfeit bill should have been uttered, passed, or given in payment as and for a true bill; and the court held the indictment good.

Again, in the case of Hopkins v. Com., 3 Metc. (Mass.) 460, when the statutory offense was having in possession any counterfeit bank bills, with intent to pass, knowing the same to be counterfeit, and the indictment charged in the language of the statute, the supreme court of Massachusetts say the omission of the words "as true," strengthens the conclusion that the legislature intended to prohibit the passing of counterfeit bills as money, or to be used or passed as money, by any person at any rate of discount, or otherwise, whether as between him and the immediate receiver they were passed as true or not.

And further on in the case. the court say: "The word 'pass,' as used in the statute, and generally as applied to bank notes, is technical. and means to deliver them as money, or as a known and conventional substitute for money." And therefore to sustain such indictment,—i. e., an indictment for passing, —"it must be proved that the party who is charged, passed the counterfeit bill to another for some valuable consideration, or otherwise as for money. or as to be used for money, with the guilty purpose of defrauding the community."

I find no case in conflict with those I have referred to; hence the conclusion at which I arrived when the question arose on the trial is not shaken but confirmed.

The congress of the United States has defined it an offense to utter, pass, publish, or sell a counterfeit United States note, with intent to deceive or defraud, omitting the words "as true," or any equivalent words. The manner of passing, or the terms upon which the notes are put off or disposed of, are not material, so long as the delivery or putting off of the false notes be as and for money, in lieu of money, or to be used as and for money, with intent to deceive or defraud.

And whether the receiver knew the notes were false or not; whether he took them at what their face purported, or for one-half, or one-third, or any other value, if the purpose was to put them into circulation as money, it is not only passing, but as the tendency would be to defraud the government, it must be held to be passing with intent to defraud the United States. A sale and delivery for circulation of forged notes is a felonious passing within the act of congress.

Pass, utter, publish, and sell, are in some respects convertible terms, and, in a given case, "pass" may include utter, publish, and sell. So far as the act of February 5, 1867, is repugnant to, or inconsistent with, the act of June 30, 1864, it should be held to repeal the latter; but I am not inclined to take the view that there is any repugnancy. I think a given case may be presented under either statute, and this case is one of them. In the one case, under the act of June 30, 1864, the indictment must charge the passing to have been with intent to deceive or defraud; to prosecute for the same act of passing under the statute of February 5, 1867, the indictment must charge the passing to have been with intent that the false note will be passed as true.

In conclusion, I would remark; that I have, by letter, referred the questions arising under this motion to my learned brother, Justice Swayne, who writes me he has examined the authorities, and is satisfied that I decided aright. Sustained by the high authority of this learned justice of the supreme court of the United States, I am doubly assured that the judgment which I pronounce is no denial of legal rights to the respondent.

The motion for a new trial is denied.