**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Brinda DeFILIPPIS,
Defendant-Appellant.**

**No. 80–1155.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 5, 1980.

Decided March 2, 1981.

John W. Tapp, Seattle, Wash., for defendant-appellant.

Kenneth Parker, Asst. U. S. Atty., Seattle, Wash., for plaintiff-appellee.

Before VAN DUSEN *, Senior Circuit Judge, ANDERSON and BOOCHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge:

Brinda DeFilippis was convicted on six counts of passing and uttering altered United States obligations with the intent to defraud, in violation of 18 U.S.C. § 472. On appeal she contends that her conduct did not violate the statute, and that the jury instructions setting forth the elements of a section 472 violation were improper. She further contends that this court should re-

* The Honorable Francis L. Van Dusen, Senior United States Circuit Judge, Third Circuit, sitting by designation.

mand for an evidentiary hearing to determine whether it was an element of her husband's plea agreement that charges against her be dismissed. We affirm the conviction.

FACTS

Brinda DeFilippis and her husband Lawrence concocted a simple scheme to defraud local merchants, using altered one-dollar bills. Brinda and/or Lawrence would enter a store and make a small purchase, paying with a twenty-dollar bill. The store clerk would usually return change of a ten, five and several one-dollar bills. The DeFilippises would then walk away from the counter, exchange the good ten-dollar bill for a previously prepared one-dollar bill with the end of a ten-dollar bill taped over it, and return to the counter claiming that the clerk had mistakenly given them the altered bill. Although several clerks who testified at trial indicated that they were uncertain whether the altered bill came from their cash register, they generally exchanged the altered bill for a genuine ten. Thus, the DeFilippises would defraud a merchant out of nine dollars every time they successfully executed this scheme.[1]

Several store clerks became suspicious of this scheme and notified the police. After an investigation, Brinda and Lawrence were indicted by the Grand Jury for the Western District of Washington, which charged them with eight counts of violating 18 U.S.C. §§ 472 and 2, passing and uttering altered obligations of the United States with the intent to defraud.[2] On August 3, 1979, Lawrence appeared before Judge Tanner represented by counsel Samuel Fancher, and pled guilty to one count of the indictment. Under the express terms of the plea agreement, the United States agreed to drop the other seven counts and to stand mute regarding sentencing in return for Lawrence's plea. The court sentenced Lawrence to a $500 fine and ten years imprisonment, with nine years and six months suspended. Lawrence was placed on probation after serving six months in jail.

Brinda's case was referred to the pretrial diversion program, but the Probation Office eventually determined that she was ineligible because of misrepresentations she made regarding her criminal history. Her case was therefore transferred to the district court, and trial before Judge Tanner commenced on January 28, 1980. On the morning of trial, Brinda's counsel, Irwin Schwartz, claimed that charges should be dismissed against Brinda pursuant to a promise the United States Attorney allegedly made as part of Lawrence's plea agreement. Judge Tanner examined the transcript of Lawrence's plea proceedings, concluded that the parties made no agreement regarding Brinda, and denied Brinda's request for oral testimony on the matter.

Brinda's case went to trial, and the jury found her guilty on the remaining six counts of the indictment.[3] The court suspended imposition of sentence and placed Brinda on three years probation for each count, sentences to run concurrently. Brinda admits the details of the scheme outlined above, but raises three contentions on appeal: (1) that 18 U.S.C. § 472 does not apply to her conduct; (2) that the jury instructions providing for conviction on either passing or uttering necessitate reversal; and (3) that the case should be remanded for an evidentiary hearing on Brinda's allegation that Lawrence bargained for the dismissal of charges against Brinda.

---

1. The DeFilippises used only a small part of a ten-dollar bill each time they altered a one-dollar bill, and the remaining portion of the ten is good at its face value, if at least "one-half of the original whole note remains." 31 C.F.R. § 100.5 (1980).

2. 18 U.S.C. § 472 provides:
   Whoever, with intent to defraud, passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, or with like intent brings into the United States or keeps in possession or conceals any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both.
   18 U.S.C. § 2 provides for punishment as a principal for anyone who aids or abets a crime against the United States.

3. Before trial, the government moved to dismiss two of the eight indictment counts, and the motion was granted.

## I. APPLICABILITY OF § 472

Under its specific terms, section 472 prohibits passing or uttering of an "altered obligation or other security," with the intent to defraud.[4] DeFilippis does not dispute that she and her husband passed altered one-dollar bills with an intent to defraud. Nevertheless, she contends that section 472 does not apply because under her scheme, she never represented that the altered bill was genuine, and there was never any attempt to put the bill into circulation as money. On the contrary, the scheme depended on the fact that the bill was bogus and that the store clerk was made aware of the alteration.

Most prosecutions under section 472 involve the typical counterfeiting scheme, where the person passing the bill must represent that it is genuine in order to be successful. *See United States v. McCall*, 592 F.2d 1066, 1067 (9th Cir.), *cert. denied*, 441 U.S. 936, 99 S.Ct. 2061, 60 L.Ed.2d 665 (1979). Nowhere in the statute, however, is there any language requiring a representation of genuineness. *See United States v. Cluchette*, 465 F.2d 749, 752 (9th Cir. 1972) (section 472 convictions sustained even though defendant represented that the bills were not genuine). DeFilippis' development of an apparently novel scheme does not absolve her from liability; her conduct is still prohibited by the statute. To sustain a section 472 conviction under a passing theory,[5] all the government must prove is that the defendant passed an altered or counterfeit bill, knew it was altered or counterfeit, and passed it with an intent to deceive. *McCall*, 592 F.2d at 1068. This test is the same as set forth in Jury Instruction 9, upon which DeFilippis was convicted.

DeFilippis contends that passing, like uttering, requires some attempt to put the passed bill into circulation. There are no recent cases decided under section 472, however, that specifically add this requirement for passing. The cases cited by DeFilippis merely demonstrate that typical section 472 cases involve an attempt to put a bogus note into circulation. *See, e. g., United States v. Holmes*, 453 F.2d 950 (10th Cir.), *cert. denied*, 406 U.S. 908, 92 S.Ct. 1618, 31 L.Ed.2d 819 (1972).

The key element of section 472 is its mens rea, the specific intent to defraud. *See United States v. Jiminez-Serrato*, 451 F.2d 523, 525 (5th Cir. 1971). The language of the statute is broad enough to prohibit any scheme involving altered federal reserve notes when they are used with an intent to defraud, and we decline to add the statutory gloss requested by DeFilippis. As the Fifth Circuit has noted, the government has an interest in preventing the fraudulent use of any of its services, and the sanctions of section 472 "should be applied when the physical integrity of the currency is challenged in any way." *Barbee v. United States*, 392 F.2d 532, 536 (5th Cir.), *cert. denied*, 391 U.S. 935, 88 S.Ct. 1849, 20 L.Ed.2d 855 (1968). DeFilippis' scheme fell within the proscription of the statute.

## II. PROPRIETY OF THE JURY INSTRUCTIONS

The court stated that the first element of a section 472 violation was satisfied if the defendant "passed *or* uttered an altered United States Federal Reserve Note . . . ." Jury Instruction 9 (emphasis added). Jury Instruction 7 defined passing as "putting it [a note] off in payment or exchange," and uttering as requiring an intent or offer to pass a note, coupled with "a declaration that it is good."[6] Because there was no claim of genuineness in the DeFilippis scheme, it is clear that passing is the only possible means of section 472 violation under the facts of this case.

DeFilippis contends, however, that because there was no evidence presented on

---

4. *See* note 2 *supra.*

5. Although the trial court instructed the jury on both passing and uttering, it is clear that DeFilippis was convicted on a passing theory. Because the evidence supports a conviction based on passing, we need not decide whether utter-

ing requires any additional elements, such as "a declaration that it [the note] is good" or an attempt to circulate. *See* Section II, *infra.*

6. *See* Black's Law Dictionary 1280, 1716 (4th rev. ed. 1968).

uttering and the instruction was given in the alternative, the jury may have convicted on a ground unsupported by the evidence. The government conceded that there was no evidence to support a conviction for uttering, and at trial agreed with the defendant's request to strike that part of the instruction. Nevertheless, the court gave both the passing and uttering instructions, apparently because both means were listed in the indictment.[7] While we believe that the court should not have given the uttering instruction, any resulting error was harmless under the facts of this case. Fed.R.Crim.P. 52(a); *United States v. Strand*, 574 F.2d 993, 995 n.1 (9th Cir. 1978).

We note initially that it is extremely unlikely that any juror could have found a "declaration that it is good" as required by the jury instruction. Both parties agree that no such declaration was ever made, and a juror would have had to disregard totally the evidence presented to find a declaration. In *United States v. Clavey*, 565 F.2d 111, 116 (7th Cir. 1977), *modified on other grounds*, 578 F.2d 1219 (7th Cir.) (en banc), *cert. denied*, 439 U.S. 954, 99 S.Ct. 954, 58 L.Ed.2d 345 (1978), the defendant was on trial for failure to report income on his tax returns. The trial court instructed the jury on the taxable status of political campaign funds diverted to personal use.

The defendant objected to the instruction, and both parties agreed that there was no evidence to support the instruction. Nevertheless, on appeal the court, reasoning that "[b]ecause there was no evidence that campaign funds were ever diverted to Clavey's personal use, the jury could not have convicted Clavey on the basis of the campaign fund instruction," held that inclusion of the instruction was harmless.[8] *Id.* In the instant case, because there was no evidence of any declaration, the jury could not have convicted on the uttering instruction.

Furthermore, even if a juror could have conceivably found that DeFilippis made a declaration that the note was good, the jury instruction required that for an uttering conviction there also must have been "an intention to pass, or an offer to pass . . . ." Passing is itself a valid basis for a section 472 conviction, but an offer or intent to pass is not. Under the facts of this case, however, DeFilippis completed the acts which could constitute passing. There is no contention that she merely intended or offered to pass the altered notes. A juror could not have found that DeFilippis merely intended or offered to pass an altered note without finding that she in fact passed it, which is a sufficient basis for a section 472 conviction.[9] Since the definition of "uttering" involved "passing," all of the jurors

---

7. The indictment charged DeFilippis in the conjunctive, with both passing *and* uttering. This is the standard form of an indictment, however, and the government only has to prove one or the other where the statute is disjunctive. *United States v. Quigley*, 462 F.2d 625, 626 (9th Cir. 1972).

8. *See also United States v. Baker*, 611 F.2d 961, 963–64 (4th Cir. 1979) (harmless error for the court to instruct on "using facilities of interstate commerce," even though evidence only supported "travel in interstate commerce," an alternative means of statutory violation); *United States v. Demopoulos*, 506 F.2d 1171, 1180 (7th Cir. 1974), *cert. denied*, 420 U.S. 991, 95 S.Ct. 1427, 43 L.Ed.2d 673 (1975). *But see United States v. Gipson*, 553 F.2d 453, 457–59 (5th Cir. 1977) (defendant's constitutional right to a unanimous verdict is violated where jury may have disagreed over which of the six independent means of violating the statute the defendant actually committed, but only because evidence was presented on all six means).

9. *See United States v. Mont*, 306 F.2d 412, 417 (2d Cir. 1962). In *Mont*, the trial court submitted instructions on all four means of violating a narcotics statute: receiving, concealing, selling, and facilitating sale, even though no evidence was presented on selling or facilitating. The appellate court held that if there was any error, it was non-prejudicial, because on the evidence produced at trial "[i]t would be impossible for anyone to have concluded . . . that Mont had sold or facilitated a sale of heroin but had not received or concealed it."

*But see United States v. Talkington*, 589 F.2d 415 (9th Cir. 1978). In *Talkington*, a jury instruction allowed a finding of guilt based on any one of five false statements the defendant made in an I.C.C. filing. Because three of the falsehoods were immaterial, the jury might have convicted on a legally insufficient ground, therefore we held that the instructions required reversal. By contrast, in the instant case no evidence was presented on the uttering charge, and the jury could not have found a "declaration" that the note was good. Furthermore, the five statements in *Talkington* were mutual-

must have concluded that DeFilippis was guilty of passing the altered note. We hold that any error in including the uttering instruction did not affect DeFilippis' substantial rights and was harmless. Fed.R. Crim.P. 52(a).

## III. PLEA BARGAIN OF LAWRENCE DeFILIPPIS

■ DeFilippis contends that when her husband Lawrence pleaded guilty, United States Attorney Obenour agreed as a condition of the plea to dismiss charges against her. This alleged agreement was first brought to the court's attention almost six months after the plea and after Brinda was found ineligible for the pretrial diversion program. At the opening of her trial Brinda's attorney, Mr. Schwartz, requested a hearing on the issue, claiming that Lawrence and his attorney were prepared to testify to the agreement. When Schwartz raised the alleged bargain, Judge Tanner stated that he always asks the defendant if any other agreements have been made. Schwartz responded: "Your Honor, Mr. Fancher's recollection was that this was made a part of the record orally before your Honor." On this basis, Judge Tanner recessed court and reviewed the record. When he found no mention of Brinda in Lawrence's plea proceeding transcript, he denied her request for further testimony, and proceeded to trial. We note that DeFilippis did not offer any moving papers, but did offer to present testimony on the alleged agreement. Because of the unambiguous record, Judge Tanner's familiarity with the case, and his review of the record a hearing was not necessary.

We find it most persuasive that Lawrence's plea transcript, reviewed during trial by Judge Tanner, was silent regarding any agreement benefitting Brinda. This court has held that a plea transcript should not be regarded as conclusive. *Anthony v. Fitzharris*, 389 F.2d 657, 660 (9th Cir. 1968). However, *Anthony* involved an allegation of threats and coercion, which would not have appeared on the record. Furthermore, the *Anthony* court was interpreting 28 U.S.C. § 2254(d), which specifically requires a hearing, since under that statute a federal judge is reviewing the proceedings of a state court and not one in which the judge may have previously participated. While we still recognize the principle underlying *Anthony*, it will be the unusual case where a federal court will look beyond the plea transcript of its own proceedings, especially now that a full "colloquy" is required under Federal Rule of Criminal Procedure 11.[10] *See United States v. Bambulas*, 571 F.2d 525, 526 (10th Cir. 1978) (defendant is bound by his statement during plea proceedings that there were no other promises); *United States v. Coronado*, 554 F.2d 166, 170 (5th Cir.), *cert. denied*, 434 U.S. 870, 98 S.Ct. 214, 54 L.Ed.2d 149 (1977) (court should look solely to the transcripts). DeFilippis has not shown any reason why the alleged agreement was never referred to in the written bargain or the plea proceedings.

Furthermore, Judge Tanner presided at both Lawrence's plea proceedings and Brinda's trial, and thus had more freedom to deny a full evidentiary hearing. *See Blackledge v. Allison*, 431 U.S. 63, 74 n.4, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977); *Gustave v. United States*, 627 F.2d 901, 903 (9th Cir. 1980). The record indicates that the judge conducted a full colloquy with Lawrence. The court asked Lawrence and his attorney whether the written bargain was complete and whether there were any other agreements. They both responded in the negative. The court also asked Lawrence whether he or any member of his family was coerced or threatened to induce the plea, and he responded negatively.[11] We

ly exclusive acts, while in this case the two possible bases for a section 472 conviction were connected. Under the facts of the DeFilippis scheme, the jury could not have found uttering without first finding passing, a legally sufficient basis for conviction.

**10.** Effective in 1975, Federal Rule of Criminal Procedure 11 was amended to require a thor-

ough, personal discussion between the court and a defendant pleading guilty. Act of July 31, 1975, Pub.L.No.94–64, § 3, 89 Stat. 370.

**11.** "THE COURT: Has anyone attempted to intimidate, coerce or threaten you or members of your family to get you to change your plea? DEFENDANT: No, sir." II Reporter's Transcript 7.

commend Judge Tanner on his thoroughness. His questions were designed to insure that the written bargain was both voluntary and complete, and he properly decided that oral testimony from Lawrence and possibly his attorney [12] would do little to further enlighten the court.[13] We are satisfied DeFilippis' allegations were adequately considered, and we decline to remand to the trial court for further evidentiary findings.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

**12.** Lawrence DeFilippis was in court and prepared to testify on the day of Brinda's trial. There is some dispute whether his attorney, Mr. Fancher, was also in court and prepared to testify. Brinda later submitted an affidavit from Fancher stating that he would have testified to the terms of the plea bargain, but he does not allege what the content of that testimony would have been.

**13.** We also question whether Brinda has standing to raise the alleged violation of Lawrence's bargain. In *Santobello v. United States*, 404 U.S. 257, 263, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971), the Supreme Court held that when the terms of a plea bargain are violated, a defendant may either withdraw his or her plea, or obtain specific performance of the bargain. Brinda is apparently trying to obtain specific performance of her husband's alleged bargain, but cites no authority for this extension of *Santobello*.

The *Santobello* court made it clear that the choice between plea withdrawal and specific performance is within the discretion of the court, 404 U.S. at 262–63, 92 S.Ct. at 498–99, and we question whether Brinda should be allowed to make this choice. If Lawrence's bargain regarding Brinda has been violated, the remedy is for him to bring a motion to withdraw his plea under Federal Rule of Criminal Procedure 32(d), or to vacate sentence under 28 U.S.C. § 2255. *United States v. Tursi*, 576 F.2d 396 (1st Cir. 1978); *Cortez v. United States*, 337 F.2d 699, 701 (9th Cir. 1964), *cert. denied*, 381 U.S. 953, 85 S.Ct. 1811, 14 L.Ed.2d 726 (1965). We note also that Judge Tanner stated that any agreement Lawrence may have made should have no effect on Brinda, and this was apparently one of his reasons for denying further testimony on the matter. The issue of standing, however, has not been raised on this appeal and we decline to pass on it.