UNITED STATES of America

v.

Theodore WILLIAMS, Appellant.

No. 87–5668.

United States Court of Appeals,
Third Circuit.

Argued May 2, 1988.

Decided June 21, 1988.

Kevin H. Marino (argued), Robinson, Wayne, Levin, Riccio & La Sala, Newark, N.J., for appellant.

Richard J. Schechter (argued), Edna Ball Axelrod, Chief, Appeals Div., U.S. Attys. Office, Newark, N.J., for appellee.

Before HIGGINBOTHAM, STAPLETON, and GREENBERG, Circuit Judges.

## OPINION OF THE COURT

GREENBERG, Circuit Judge.

■■■■ This matter is before the court on defendant Theodore Williams' appeal from an order entered in the district court on September 11, 1987 affirming an order of a magistrate dated November 25, 1986 reinstating a jury verdict and vacating an earlier order of the magistrate under Fed.R. Crim.P. 29(c) which set aside Williams' conviction and entered a judgment of acquittal.[1] Judge Thompson's opinion in the district court is reported at 669 F.Supp. 111 (D.N.J.1987). The issue in the case involves interpretation of the statute under which Williams was charged, 18 U.S.C. § 510(a)(2) (hereinafter section 510(a)(2)), which provides, in pertinent part, that any person who with intent to defraud "passes, utters, or publishes ... any Treasury check" is guilty of an offense. Williams concedes that the evidence supports a finding that he sold a $500 United States Treasury check with a forged endorsement to an undercover agent but he correctly contends that the agent knew that the endorsement was forged. He then reasons that he cannot be convicted as, in his view, section 510(a)(2) requires a finding that he represented that the endorsement was genuine. Williams' legal contention was ultimately rejected by the magistrate and the

---

1. The case was tried before the magistrate as a misdemeanor. *See* 18 U.S.C. § 1; 18 U.S.C. § 3401. The appeal to the district court was authorized by 18 U.S.C. § 3402.

district judge and we reject it also.[2] Accordingly, we will affirm the conviction.

The facts need only be briefly summarized. In April 1985, Williams was introduced by an informant to the potential purchaser of the check, a Secret Service agent working undercover. After brief negotiations, Williams sold the agent the forged check for $200 without representing it was genuine. These events led to a complaint being filed charging that Williams "knowingly and with intent to defraud the United States uttered and passed a Treasury Check of the United States, in an amount less than $500, bearing a forged endorsement, in violation of Title 18, United States Code, Sections 510(a)(2)."[3]

In his instructions to the jury the magistrate said that Williams was charged under a section making it unlawful if a person "intending to defraud passes, utters or publishes" any Treasury check "bearing a forged endorsement or signature." He indicated that "to utter" means putting the check in circulation "by means of an assertion or misrepresentation that the instrument is genuine." The magistrate, however, did not define "passes" for the jury. In view of the evidence, it may be reasonably inferred that the jury concluded that a person could pass a check without representing it as genuine.[4]

At the trial Williams made a motion for a judgment of acquittal pursuant to Fed.R. Crim.P. 29. The magistrate initially reserved decision on the motion but after the verdict was entered he granted it on the ground that Williams did not represent that the check was genuine. On October 1, 1986 the magistrate entered an order reflecting this decision.

The government then moved for reconsideration and on November 2, 1986 the magistrate filed an opinion and order granting its motion and reinstating the verdict. In his opinion the magistrate indicated that the word "passes" in section 510(a)(2) was unambiguous and did not include a requirement that the defendant represent that the instrument was genuine.

On appeal, Judge Thompson affirmed. In her opinion she pointed out that the parties were in agreement that to "utter" a check a defendant must represent it is genuine. 669 F.Supp. at 112. She further indicated that the legislative history of section 510(a)(2) did not clarify the meaning of "passes." She pointed out, however, that when section 510(a)(2) was enacted "passes" already had a meaning which was recognized in *United States v. DeFilippis*, 637 F.2d 1370 (9th Cir.1981), under 18 U.S.C. § 472 dealing with uttering or passing counterfeit obligations of the United States. That meaning did not include a requirement that the defendant make a representation that the instrument was genuine. 669 F.Supp. at 113. She then stated that section 510(a)(2) used the concepts of passing and uttering in the disjunctive. Therefore the judge concluded that Congress adopted the then existing interpretation that uttering but not passing included a requirement that the defendant

---

**2.** In this matter involving the interpretation and application of legal precepts our scope of review is plenary. *United States v. Adams*, 759 F.2d 1099, 1106 (3d Cir.), *cert. denied*, 474 U.S. 906, 971, 106 S.Ct. 275, 336, 88 L.Ed.2d 236 (1985).

**3.** We note that the check was for $500 but the charge indicated the check was for less than $500. The distinction is not significant as the penalty for a violation involving a check for *more than* $500 is a fine of $10,000 or imprisonment for not more than ten years, or both, whereas the penalty is reduced to $1,000 or imprisonment for not more than one year, or both, if the check does not exceed $500, 18 U.S.C. § 510(c). Williams does not seek relief on the basis of the apparent variance between the proofs and the complaint.

**4.** The government does not contend that the conviction should be upheld on a theory that the jury might have found that there was a representation that the endorsement was genuine. Thus, the government effectively concedes that if there is a requirement in section 510(a)(2) that the defendant represent the check as genuine to the person to whom it is passed, the conviction must be reversed. We also note that defendant was charged with uttering *and* passing the check but inasmuch as section 510(a)(2) proscribes either act in the disjunctive, proof of either uttering or passing was sufficient to support the conviction. *See United States v. Niederberger*, 580 F.2d 63, 67–68 (3d Cir.), *cert. denied*, 439 U.S. 980, 99 S.Ct. 567, 58 L.Ed.2d 651 (1978).

represent the item as genuine since it showed no intention that it was changing the plain meaning of "passes" in section 510(a)(2) or that it intended that "passes" and "utters" have the same meaning. Williams has appealed from Judge Thompson's order to this court.

Williams supports his interpretation of section 510(a)(2) with the following argument. Prior to 1983 persons passing or uttering Treasury checks with forged endorsements were prosecuted under 18 U.S.C. § 495 (hereinafter section 495) which in germane part provides:

> Whoever utters or publishes as true any such false, forged, altered, or counterfeited writing [deed, power of attorney, order, certificate, receipt, contract, or other writing], with intent to defraud the United States, knowing the same to be false, altered, forged, or counterfeited [is guilty of an offense].

The section, however, was not satisfactory for dealing with offenses involving checks, bonds and securities as it did not specifically mention these instruments. Further, section 495 did not cover situations in which a legitimately endorsed check was stolen and then transferred or in which the vendor sold an instrument to a middleman without endorsing it. *See Edwards v. United States*, 814 F.2d 486, 489 (7th Cir. 1987); 129 Cong.Rec. S9342 (daily ed. June 28, 1983) (statement of Senator DeConcini). Thus, in 1983 Congress enacted 18 U.S.C. § 510 to make specific reference to offenses involving Treasury checks, bonds and securities and to create offenses involving the transfer of legitimately endorsed or unendorsed instruments not within section 495. The offenses involving legitimately endorsed or unendorsed instruments including checks were created in 18 U.S.C. § 510(b) rather than section 510(a)(2), as § 510(b) proscribes buying, selling, exchanging, receiving, delivering, retaining or concealing a stolen Treasury check, bond or security, or such an instrument with a forged or falsely made endorsement. The purpose of section 510(a)(2) was merely to extend the existing provisions of section 495 to Treasury checks, bonds and securities.

Thus, Williams contends that the government's action in charging him with violation of section 510(a)(2) was inexplicable as that section, in his view, is "the mirror image" of section 495. Accordingly, Williams contends that the government deprived itself of the provisions of 18 U.S.C. § 510(b) as the government in the prosecution under section 510(a)(2) continued to have the burden established in section 495 to show that the transfer was accompanied by a representation that the endorsement was genuine.

We reject this argument for several reasons. We recognize that to violate section 495 by uttering or publishing a false, forged, altered, or counterfeited writing a person must represent the writing as genuine. *See United States v. Hyatt*, 565 F.2d 229, 232–33 (2d Cir.1977). But contrary to Williams' assertions, section 510(a)(2) is not merely a mirror image or recasting of section 495 modified to refer to Treasury checks, bonds and securities bearing a falsely made or forged endorsement or signature. Indeed, the differences between sections 495 and 510(a)(2) are manifest. First, under section 495 a person convicted of uttering or passing the writing must have an "intent to defraud the United States." Under section 510(a)(2) he need only have an "intent to defraud." Second, section 510(a)(2) proscribes attempts to pass, utter or publish the instruments involved. Nothing in section 495 makes an attempt to utter or publish the instruments an offense. Third, section 495 includes as an element of the offense that the government establish that the writing be uttered or published "as true." There is no equivalent requirement in section 510(a)(2). Fourth, Congress in section 510(a)(2) expanded upon "utters" and "publishes," the methods of transfer mentioned in section 495, by adding "passes."

In view of these differences between sections 495 and 510(a)(2) the latter section cannot possibly be deemed a mirror image of the former. Further, two of the changes, omission in section 510(a)(2) of the section 495 requirement that the instrument be represented "as true" and the

addition in the category of transfers proscribed in section 510(a)(2) of "passes," relate directly to this case. It must, of course, be remembered that Congress in enacting 18 U.S.C. § 510 specifically considered the deficiencies in section 495 and did not entirely track its provisions. Therefore, the omission of the requirement in section 510(a)(2) that the instrument be transferred "as true" cannot be ignored. Surely if Congress had intended that transfer include a representation of genuineness under section 510(a)(2), it would not have omitted the "as true" language. In this regard we point out that the significance of the words "as true" in section 495 is hardly new. In *United States v. Nelson,* 27 F.Cas. 80 (D.C.W.D.Mich.1867) (No. 15,861), the court held that a defendant could be convicted of passing counterfeit currency to an undercover agent who knew what he was buying since the statute involved did not require the currency be passed "as true."

Inclusion of the transfer category of "passes" in section 510(a)(2) has obvious significance, though Williams argues that the addition of this word has no substantive impact as the transfers described in section 495, uttering and publishing, have been characterized by courts as meaning passing. *See, e.g., United States v. Marshall,* 431 F.2d 944 (5th Cir.1970) (counts for uttering and publishing cheeks under section 495 dismissed for "want of proof of passing these checks."). We cannot accept Williams' argument for the intent of Congress in section 495 was that the defendant represent the instrument as genuine. Thus, if a court in prosecutions under section 495 chooses to use a vernacular term, *i.e.,* "passes" for the more technical terms of "utters" and "publishes," it may do so but it is obliged to honor the Congressional intent by defining "passes" consistently with the statute. The issue before us, however, is not the meaning courts intend when they use "passes" as a substitute for "utters" or "publishes" in construing section 495. It is what Congress intended when it used "passes" in section 510(a)(2).

As Judge Thompson noted, authoritative precedent shows that the courts, when defining "passes" as used by Congress in a statute, do not include a requirement that the transferor represent the instrument as genuine. Thus, in *United States v. DeFilippis,* 637 F.2d 1370, decided two years before the enactment of 18 U.S.C. § 510, the court held that a defendant could be convicted of passing altered money under 18 U.S.C. § 472 even though she did not represent that the bills were genuine and the transferees knew full well they were not. Obviously, *DeFilippis* is a far more significant precedent than *United States v. Hyatt,* relied on by Williams, because the word "passes" was used by Congress in 18 U.S.C. § 472 but was not used in section 495, the section construed in *Hyatt.* Further, *DeFilippis* is consistent with *United States v. Nelson,* decided more than a century earlier.

Williams seeks to avoid *DeFilippis* by indicating that the case is distinguishable on the facts. He further asserts, somewhat uncharitably, that *DeFilippis* is "a poorly reasoned, erroneous decision." Obviously, the facts in *DeFilippis* are quite different than those here but the case is not distinguishable on the point for which we cite it. We regard *DeFilippis* as a compelling precedent as passing a forged Treasury check and passing altered currency both involve transfers of intangible property. In those circumstances we do not understand why "passes" should mean different things for the similar items involved.

Further, we are not impressed with Williams' assault on *DeFillippis.* First, we agree with the result in that case. Second, the significance of *DeFilippis* is that it clearly defined "passes" only two years before Congress enacted section 510. From this chronology an inference may be drawn that Congress used the word "passes" in section 510(a)(2) without requiring a showing that the transferor represent the instrument as genuine.

The cases of *United States v. Fields,* 783 F.2d 1382 (9th Cir.1986), and *Edwards v. United States,* 814 F.2d 486, relied on by Williams, are not at odds with our result. *Fields* held that a defendant could be con-

victed under 18 U.S.C. § 510(b) of delivery of stolen Treasury checks even though they did not bear falsely made or forged endorsements. Clearly, that result does not undermine our conclusion that all of the elements of section 495 cannot be read into section 510(a)(2). While the *Fields* court pointed out that in 18 U.S.C. § 510(b) Congress intended to close a loophole in section 495 as that section did not reach "stolen Treasury checks that were not falsely endorsed" (783 F.2d at 1384), that purpose may co-exist with the broadening of section 495 in section 510(a)(2).

In *Edwards* the court held that 18 U.S.C. § 510 had not impliedly repealed section 495 with respect to Treasury checks not exceeding $500 in face value. Thus, the defendant, who was sentenced under section 495 to five years imprisonment for forging an endorsement on a $437 Treasury check and then uttering it, was not entitled to relief in a proceeding under 28 U.S.C. § 2255 even though 18 U.S.C. § 510, which was enacted shortly before he was sentenced and included the offense of which he had been convicted, reduced the penalty for his offense to not more than a $1,000 fine and one year imprisonment, or both. The court held that section 495 had not been impliedly repealed as the "only purpose revealed by the legislative history of section 510 is to close" the loophole in section 495 which does not provide for prosecution if a properly endorsed check is stolen and then cashed or if the thief sells the check without endorsing it. 814 F.2d at 489. Thus, the court held that there was no suggestion in 18 U.S.C. § 510 that Congress intended to lighten the maximum punishment for offenses prosecuted under section 495. 814 F.2d at 489.

The *Edwards* court did point out that inasmuch as the properly endorsed or unendorsed check loophole was closed by enactment of 18 U.S.C. § 510(b) there was a question of why 18 U.S.C. § 510(a) was adopted. 814 F.2d at 490. It answered the question by noting out that even though 18 U.S.C. § 510(a) "traverses ground already covered, though less explicitly" by section 495 (814 F.2d at 489), it was enacted "to eliminate whatever doubts might attend the use" of section 495 "to federal government obligations," *i.e.,* Treasury checks, bonds or securities. 814 F.2d at 490.

We do not quarrel with the *Edwards* court as it undoubtedly reflected Congress' intent in its opinion. Further, we agree that section 510(a)(2) does traverse ground already covered in section 495. But *Edwards* does not impact on our result as that case did not consider the significant differences in wording involving the omission of "as true" in section 510(a)(2) and the inclusion of "passes" in that section though it did not appear in section 495. This is quite understandable as the changes were not significant to the issue before the *Edwards* court. Thus, *Edwards* is not inconsistent with our holding that section 510(a)(2) in covering ground already traversed in section 495 does so along a wider path.

While the legislative history of 18 U.S.C. § 510 does not make particular reference to the issue before us, to the extent it is germane it supports our result. When 18 U.S.C. § 510 was proposed Senator DeConcini indicated that:

> The creation of section 510 to title 18, United States Code, would make it a felony: First, to forge an endorsement or signature on a U.S. Treasury check or bond or security of the United States; *or second, to pass or attempt to pass such an obligation with the knowledge that it has been forged.* It would also make it a felony to knowingly exchange or possess exchange or possess such an obligation of the United States which has been stolen or bears a forged endorsement. 129 Cong.Rec. S9342 (daily ed. June 28, 1983) (statement of Senator DeConcini). (Emphasis added).

This statement is of some significance as it sets forth that the defendant must have knowledge that the instrument is forged but gives no indication that he must represent it is genuine.

We realize, of course, that our result may, as a practical matter, make it unnecessary for the government to prove uttering in a prosecution under section 510(a)(2), a term the parties agree includes a repre-

sentation of genuiness. *See United States v. Nelson*, 27 F.Cas. at 81. But we do not see why that should in any way impact on the meaning of "passes." Congress was free to interdict two types of transfers in one subsection. We also recognize that the practice of the courts is to resolve questions concerning the ambit of a criminal statute leniently. *See Dunn v. United States*, 442 U.S. 100, 113, 99 S.Ct. 2190, 2197, 60 L.Ed.2d 743 (1979). But we do not resort to that practice as Williams' conduct was plainly and unmistakably proscribed by section 510(a)(2). *See also United States v. Barrett*, 837 F.2d 933, 935 (10th Cir.1988).

We have not lost sight of Williams' contention in his brief that by

> reading 'pass' to include any hand to hand transfer of a forged Treasury check, the Courts below rendered inoperative § 510(b)'s all-inclusive ban on such transfers which is amply expressed in the 'buys, sells, exchanges, receives, delivers, retains, or conceals' language of that subsection. Under the Court's reading, the purchase, sale, exchange, receipt and delivery of a forged Treasury check —all clearly proscribed by § 510(b)—could be prosecuted as passes under § 510(a)(2). Were this Court to adopt that interpretation, the language in § 510(b) proscribing those acts would be reduced to a mere redundancy.

At oral argument before us Williams reversed the redundancy contentions by urging that under the result reached in the district court "section 510(a)(2) has no effect, because everything that could conceivably be addressed by 510(a)(2) is amply covered by 510(b)" and "b is not going to be the nullity, 510(a)(2) is the nullity."

The fact is that no matter how 18 U.S.C. § 510 is read there will be redundancies within its subsections. For example, under any conceivable reading of 18 U.S.C. § 510 a thief who steals a Treasury check and then endorses it and, representing it as genuine, cashes it with an innocent merchant, can be prosecuted under either subsection (a)(2) or subsection (b) for the transfer. Nevertheless there are differences between the subsections though undoubtedly their provisions overlap. Thus, 18 U.S.C. § 510(b) deals with validly endorsed or unendorsed instruments and section 510(a)(2) does not. On the other hand the latter but not former section mentions attempts. In any event if the subsections are to be mutually exclusive, though we see no reason why they should be, Congress will have to rewrite them as we cannot.

Finally, as noted in *Edwards v. United States*, 814 F.2d at 490, the principal novelties in 18 U.S.C. § 510 were in subsection (b), which closed the loophole in section 495 in favor of the thief who stole an endorsed check or sold the check without enclosing it, and in subsection (c) which deals with penalties. Thus in subsection (b) Congress added a provision without a comparable antecedent in section 495. But at the same time it enacted section 510(a)(2) which traversed ground already covered by section 495. In the circumstances it is not surprising that there is duplication. Indeed, as recognized in *Edwards*, 18 U.S.C. § 510 itself partially repeats provisions from section 495.

The order of the district court will be affirmed.