

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-3-2006

# Bobb v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 05-2891

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Bobb v. Atty Gen USA" (2006). *2006 Decisions.* Paper 539.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/539

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-2891

———

ALVIN BOBB,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

———

On Petition for Review from an
Order of the Board of Immigration Appeals
(Board No. A43 156 231)
Immigration Judge R. K. Malloy

———

Argued June 13, 2006
Before:  FISHER, ALDISERT and LOURIE,* *Circuit Judges*.

———

*The Honorable Alan D. Lourie, United States Circuit
Judge for the Federal Circuit, sitting by designation.

(Filed: August 3, 2006)

Steven A. Morley (Argued)
Morley, Surin & Griffin
325 Chestnut Street, Suite 1305-P
Philadelphia, PA 19106
        *Attorney for Petitioner*

Viveca D. Parker (Argued)
Office of United States Attorney
615 Chestnut Street
Philadelphia, PA 19106
        *Attorney for Respondent*

---

OPINION OF THE COURT

---

FISHER, *Circuit Judge*.

Petitioner Alvin Bobb, a lawful permanent resident, pleaded guilty to forging a check in the amount of $13,277, in violation of 18 U.S.C. § 510(a)(2), and was sentenced to four months imprisonment. An immigration judge ("IJ") determined at Bobb's bail hearing that his conviction was not an "aggravated felony" for purposes of removal, and the Board of Immigration Appeals ("BIA") affirmed. At a subsequent removal hearing, however, a different IJ determined that the crime was an "aggravated felony," which the BIA affirmed. That decision has dire consequences for Bobb's efforts to

2

remain in the United States, as it renders him removable and precludes him from seeking discretionary relief from removal in the form of a readjustment of status.

Our task is to determine whether Bobb's conviction was an "aggravated felony." In so doing, we must survey the interrelationship between two statutory provisions set forth under 8 U.S.C. § 1101(a)(43): subsection (M)(i), which states that an "aggravated felony" is "an offense . . . that involves fraud or deceit in which the loss to the victim exceeds $10,000"; and subsection (R), which states that "an offense relating to . . . forgery . . . for which the term of imprisonment is at least one year" is an "aggravated felony." Bobb contends that the BIA erred in holding he committed an aggravated felony because subsection (R), which specifically references the crime of forgery and all related offenses, is the exclusively applicable aggravated felony provision for all forgery offenses. In the alternative, Bobb argues that his offense was a "hybrid offense" under our recent opinion in *Nugent v. Ashcroft*, 367 F.3d 162 (3d Cir. 2004), and that the government accordingly should have been required to establish all the criteria specified by both subsections. Under either theory, Bobb's conviction would not constitute an aggravated felony because subsection (R) includes a requirement that the alien have served a term of imprisonment of greater than one year.

This appeal asks us to decide which "aggravated felony" definition applies to Bobb's case – the "related to forgery" provision of subsection (R), the broad catch-all "fraud" provision of subsection (M)(i), or both. For the reasons set forth below, we conclude that the BIA did not err in determining that

3

Bobb's underlying criminal conviction was an "aggravated felony" under subsection (M)(i), and that Bobb's conviction was not a "hybrid offense" under *Nugent*. Accordingly, we will deny Bobb's petition for review.

I.

Bobb is a native and citizen of Trinidad and Tobago who entered the United States as a lawful permanent resident on September 30, 1991. On December 18, 1995, Bobb forged a United States Treasury check in the amount of $13,277. He was subsequently charged with forging endorsements on treasury checks, in violation of 18 U.S.C. § 501(a)(2). Bobb pleaded guilty and was sentenced by the District Court on October 21, 1999, to a term of imprisonment of four months.

On December 14, 1999, the INS[1] issued Bobb a Notice to Appear, charging that he was subject to removal from the United States for committing an aggravated felony as defined under section 1101(a)(43)(M)(i) of the Immigration and Nationality Act ("INA"). 8 U.S.C. § 1101(a)(43)(M)(i). On June 6, 2000, the INS lodged an additional deportation charge

[1]On March 1, 2003, the INS ceased to exist as an agency of the Department of Justice. Pursuant to the Homeland Security Act of 2002, the enforcement functions of the INS were transferred to the Department of Homeland Security, Bureau of Immigration and Customs Enforcement ("BICE"). *See* Homeland Security Act of 2002, Pub. L. No. 107-296, § 441, 116 Stat. 2135, 2192.

4

against Bobb alleging a separate ground for removability: that he had been convicted of a crime involving moral turpitude committed within five years after his admission, and for which a sentence of one year or more imprisonment could be imposed. *See* 8 U.S.C. § 1227(a)(2)(A)(i). Bobb has conceded this second charge, *see* App. 11, but disputes the first charge that his conviction was an aggravated felony under subsection (M)(i).

At Bobb's initial bond hearing, an IJ concluded that Bobb's offense was not an aggravated felony and that he therefore qualified for bond. (App. 33-37.) The IJ, noting that Congress had to have been aware when it enacted subsection (R) that "forgery is <u>always</u> fraud," determined that including all forgery offenses in subsection (M)(i) would render subsection (R) surplusage unless Congress manifested a clear intention to have the general "fraud" provision govern over the specific "forgery" section. As a result, the IJ granted Bobb bond in the amount of $1,500.00, a decision which the BIA affirmed over the government's appeal. (App. 37-38.)

Following his release on bond, Bobb sought to terminate his removal proceedings in order to apply for a readjustment of status. As a lawful permanent resident married to a United States citizen, Bobb is eligible to petition BICE for a discretionary readjustment of status unless, *inter alia*, it is determined that he has committed an "aggravated felony." *See* 8 U.S.C. § 1182(h). The government countered Bobb's motion by moving to pretermit Bobb's application.

A second IJ conducted removability proceedings and considered the motions. The IJ noted that the prior

5

determination at the bond hearing that Bobb's conviction was not an aggravated felony was not controlling in the removability proceedings. *See* 8 C.F.R. § 1003.19(d) [formerly § 3.19(d)].[2] The IJ held that Bobb's conviction satisfied subsection (M)(i), and that the INS was not obligated to charge Bobb under subsection (R). Citing the legislative history of subsection (R), the IJ explained that accepting Bobb's interpretation would lead to the "absurd result" that the addition of subsection (R) to section 1101(a)(43) had decreased the number of crimes that could be considered aggravated felonies, despite Congressional intent to the contrary. (App. 58.) *See* H.R. Rep. No. 104-22, at 7 (1995); 141 Cong. Rec. E330-01 (1995). Accordingly, the IJ concluded that subsections (M)(i) and (R) were separate and distinct statutes:

---

[2]That section provides as follows:

Consideration by the Immigration Judge of an application or request of a respondent regarding custody or bond under this section shall be separate and apart from, and shall form no part of, any deportation or removal hearing or proceeding. The determination of the Immigration Judge as to custody status or bond may be based upon any information that is available to the Immigration Judge or that is presented to him or her by the alien or the Service.

8 U.S.C. § 1003.19(d).

The fraud section of the INA deals with offenses involving fraud or deceit where the loss to the victim(s) is greater than $10,000. The "forgery section" is actually not a section limited to forgery offenses (a subset of fraud), but instead includes a variety of organized crime relating to immigration, and further requires one year imprisonment. One section, INA § 101(a)(43)(M)(i) was enacted to deport individuals engaging in deceptive conduct causing great loss of money, and the other section, INA § 101(a)(43)(R), was enacted to deport those whose crimes were serious enough to merit one year of imprisonment.

(App. 59.) The decision finding that Bobb's underlying offense was an aggravated felony resolved both pending motions, and it barred Bobb from receiving a discretionary readjustment of status.[3] On January 24, 2004, the BIA affirmed without opinion. (App. 63.)

## II.

On June 24, 2004, Bobb filed a petition for writ of habeas corpus in the United States District Court. While that petition

---

[3]The parties agree that Bobb is not eligible for cancellation of removal, the other form of discretionary relief available for a permanent resident convicted of a crime. 8 U.S.C. § 1229b(a).

remained pending, Congress passed the Real ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231. Pursuant to the terms of that Act, we convert Bobb's habeas petition into a petition for review. *See Bonhometre v. Gonzales*, 414 F.3d 442, 445-46 (3d Cir. 2005).

We have jurisdiction over Bobb's petition for review under 8 U.S.C. § 1252(a)(1). Under the REAL ID Act, our jurisdiction extends to "'questions of law raised upon a petition for review,' including petitions for review of removal orders based on aggravated felony convictions. 8 U.S.C. § 1252(a)(2)(D)." *Popal v. Gonzalez*, 416 F.3d 249, 251 (3d Cir. 2005). We exercise *de novo* review over the BIA's conclusion that Bobb's criminal conviction constitutes an aggravated felony. *Ki Se Lee v. Ashcroft*, 368 F.3d 218, 221 (3d Cir. 2004).[4]

---

[4]Although we give *Chevron* deference to the BIA's interpretation of the aggravated felony provisions of the INA if we determine that the statute is ambiguous, *see Valansi v. Ashcroft*, 278 F.3d 203, 208 (3d Cir. 2002), the BIA is not entitled to *Chevron* deference as to whether a particular federal criminal offense is an aggravated felony. That determination requires us to interpret federal criminal law and our own appellate jurisdiction, matters outside the authority or expertise of the BIA. *See Tran v. Gonzalez*, 414 F.3d 464, 467 (3d Cir. 2005) (declining to give *Chevron* deference to the BIA's interpretation of a federal criminal statute because it was "a task outside the BIA's special competence and congressional delegation, while it is very much a part of this Court's

III.

At the outset, it is helpful to identify the parties' competing arguments. Bobb contends that we should read subsection (M)(i) to encompass all fraud or deceit <u>not</u> otherwise specified in section 1101(a)(43). Thus, since subsection (R) specifically covers "forgery," the Government should not be permitted to charge Bobb as being removable under subsection (M)(i). In contrast, the Government argues that subsection (R) is not merely a subset of subsection (M)(i). According to the Government, not all forgery-related offenses involve fraud, and Congress's intent in enacting subsection (R) was, in part, to capture those forgery-related offenses that do not involve fraud and deceit. As a result, the Government argues that the BIA correctly concluded that Bobb was convicted of an offense that involved fraud and deceit.

Our task is twofold: first, we must determine whether Congress intended that forgery-related convictions constitute aggravated felonies only under subsection (R); and second, whether, in the alternative, Bobb's offense is a "hybrid offense" that requires the government to meet all the requirements of both subsections (M)(i) and (R) in order to remove Bobb.

---

competence"); *see also Soliman v. Gonzales*, 419 F.3d 276, 281 (4th Cir. 2005).

## A.

We begin by examining whether Congress intended subsection (R) to be the sole avenue for a forgery-related conviction to constitute an aggravated felony. Relying on the principle of statutory construction that a specific statutory provision controls a general provision, Bobb argues that his forgery-related conviction can only constitute an aggravated felony under subsection (R), not subsection (M)(i). This argument, however, is misplaced. The government had the discretion to charge Bobb with an aggravated felony under either or both subsections for three primary reasons. First, the broad language used by Congress in both subsections precludes a finding that subsection (R) removed all forgery convictions from the ambit of subsection (M)(i). Second, the legislative history is clear that Congress' intent in enacting subsection (R) was to increase the number of "aggravated felonies," not to provide a loophole through which an offense that would otherwise have constituted an "aggravated felony" would escape that classification. Finally, a conclusion that the INS cannot bring removal proceedings under both subsections has no analogue in the criminal context, in which courts have recognized prosecutorial discretion to bring charges when particular statutes overlap. We will examine each of these points in turn.

## 1.

Bobb, heeding the familiar canon of statutory construction that a specific statutory provision controls a general provision when the two provisions cover the same factual

context, contends that subsection (R) trumps subsection (M)(i) and is the exclusive avenue to bring removability proceedings for forgery-related convictions. Bobb asserts that subsection (R) would be superfluous if aliens chargeable under subsection (R) were always also chargeable under subsection (M)(i).

Although Bobb's argument is somewhat inviting, it ultimately fails because subsections (M)(i) and (R) were both drafted broadly by Congress. On previous occasions, we have had the opportunity to interpret the scope of both subsections. In *Valansi v. Ashcroft*, 278 F.3d 203 (3d Cir. 2002), we determined that Congress intended subsection (M)(i) to have a broad scope because that provision refers to an offense that "*involves* fraud or deceit" and which results in losses greater than $10,000. *Id.* at 209-10. As a result, we held that subsection (M)(i) covers all offenses that have as an essential element an intent to defraud or deceive. *Id.* at 210. *See Ki Se Lee*, 368 F.3d at 222 (3d Cir. 2004) ("Subsection (M)(i) has a general application – the gamut of state and federal crimes involving fraud and deceit causing losses over $10,000.").

We considered the scope of subsection (R) in *Drakes v. Zimski*, 240 F.3d 246 (3d Cir. 2001). There, the petitioner was convicted in Delaware of second-degree forgery, which had as an essential element an intent to deceive. The petitioner argued that his conviction did not constitute an "aggravated felony" because Congress intended the federal definition of "forgery" to extend only to crimes involving an intent to defraud. We noted that the term "forgery" under federal law was ambiguous, and that there was a split among the states as to whether forgery necessarily included an intent to defraud. A minority of states,

11

including Delaware, had held that forgery could also be premised on an intent to deceive. *Id.* Relying upon the conflicting interpretations among the different states, we rejected the petitioner's argument and held that Congress intended to define forgery in its broadest sense by using the language "relating to . . . forgery" in subsection (R). We concluded that "[t]he Delaware forgery statute, while apparently encompassing more conduct than is encompassed by traditional definition of forgery, is 'related to' forgery in a way that several states have made part of their criminal codes." *Id.* at 250. For this reason, we determined that it was appropriate for the BIA to read the "broad minority definition" into Subsection (R) rather than the "narrow traditional definition." *Id.*

The broad construction we have given to subsections (M)(i) and (R) rebuts Bobb's argument that all forgery convictions are necessarily governed by subsection (R) rather than subsection (M)(i). Perhaps if subsection (R) had been drafted differently – for example, if it had used the language "forgery offense" instead of "related to . . . forgery" – then Bobb's argument would have merit. At their core, all common law forgery offenses contain as an element an intent to defraud or deceive.[5] We are not dealing here, however, with a

---

[5] *See*, *e.g.*, *Commonwealth v. Leber*, 802 A.2d 648 (Pa. Super. Ct. 2001); Wayne R. LaFave, *Substantive Criminal Law*, § 19.7(j)(5) (2d ed. 2003) (stating that "[f]orgery requires an intent to defraud"); *Black's Law Dictionary* 677 (8th ed. 2004) (defining "forgery" as "1. The act of fraudulently making a false document or altering a real one to be used as if genuine. . . .

12

straightforward forgery offense because Congress drafted subsection (R) more expansively, including offenses "*related to . . .* forgery." The term "relate" means "to show or establish a logical or causal connection between." Webster's Third New International Dictionary (Unabridged) 1916 (1991). Subsection (R) thus encompasses conduct beyond the traditional definition of forgery, and includes criminal conduct that is causally connected to forgery, but may lack as an essential element an intent to defraud or deceive.

The Government provides in its brief a good example of an offense "related to" forgery that does not have as an element an intent to defraud or deceive: 18 U.S.C. § 510(b). Section 510(b) criminalizes the knowing exchange of stolen or forged Treasury instruments:

> (b) Whoever, with knowledge that such Treasury check or bond or security of the United States is stolen or bears a falsely made or forged endorsement or signature buys, sells, exchanges,

---

2. A false or altered document made to look genuine by someone with intent to deceive."); *Model Penal Code* § 224.1; 37 C.J.S. § 2 (1997) ("While it is true that there is a distinction between fraud and forgery, and forgery contains some elements that are not included in fraud, forgeries are a species of fraud. In essence, the crime of forgery involves the making, altering, or completing of an instrument by someone other than the ostensible maker or drawer or an agent of the ostensible maker or drawer.").

13

receives, delivers, retains, or conceals any such
Treasury check or bond or security of the United
States shall be fined under this title or imprisoned
not more than ten years, or both.

18 U.S.C. § 510(b). A conviction under subsection 510(b)
contains two essential elements: (1) that the defendant buy, sell,
or exchange a stolen or forged endorsement, (2) with knowledge
that the instrument has been stolen or forged. *See United States
v. Clemmons*, 892 F.2d 1153 (3d Cir. 1989) (upholding the
defendant's conviction under subsection 510(b) where there was
evidence that the defendant knew the bonds were stolen and
attempted to sell the bonds to a government informant).
Conspicuously absent from this definition is any element
containing an intent to defraud or deceive. Yet, there can be no
doubt that selling a forged check to a middleman would
constitute an offense "related to forgery": but for the forged
endorsement, there would be no criminal offense. In fact, we
have explained that the purpose of section 510(b) was to close
a loophole in the law which did not permit the government to
prosecute a defendant who sold or transferred forged or stolen
instruments to another party without representing that the
instruments were genuine. *See United States v. Williams*, 850
F.2d 142, 145 (3d Cir. 1988) (stating that section 510(b) "sets
forth that the defendant must have knowledge that the
instrument is forged but gives no indication that he must
represent it is genuine"). We agree with the government that
Congress' choice of the word "related to" was intended to
capture certain criminal conduct, such as that defined by 18
U.S.C. § 510(b), which does not contain any intent to deceive or

14

defraud.[6] *See Drakes*, 240 F.3d at 250 (referencing Congress's intent to define forgery in the broadest sense because it used the phrase "related to" in subsection (R)); *see also Valansi*, 278 F.3d at 210 (referencing Congress's intent to broaden the scope of subsection (M)(i) by using the term "involves").

Despite the broad construction we have given subsections (M)(i) and (R), Bobb argues that our decision in *Ki Se Lee v. Ashcroft*, 368 F.3d 218 (3d Cir. 2004), compels the conclusion that Bobb can only be charged as removable under subsection (R). In *Lee*, the petitioners were convicted of filing false income tax returns causing a tax delinquency in an amount greater than $50,000. The INS brought removability proceedings under subsection (M)(i), since the amount at issue was greater than $10,000. We held that the INS was precluded from removing the petitioners under subsection (M)(i) because a different provision, subsection (M)(ii), which applied specifically to tax evasion offenses in which the revenue loss to the government exceeded $10,000, identified the *only* removable tax offense. We set forth three reasons for our conclusion. First, we noted that our interpretation was the only way to avoid surplusage because there was no scenario whereby tax evasion

---

[6]In addition to section 510(b), there are a number of other federal forgery statutes that do not contain an express element of an intent to defraud or deceive. *See generally United States v. Cowan*, 116 F.3d 1360, 1363 (10th Cir. 1997) (explaining that statutes in Chapter 25 of Title 18, which are designed to protect the integrity of government functions, do not have as an element the intent to defraud or deceive).

15

did <u>not</u> involve fraud or deceit. Thus, subsection (M)(i) did not exist simply as a "catch-all" section for certain tax fraud crimes not covered by (M)(ii). Second, we determined that Congress acted purposefully by singling out tax evasion within the same subsection as the fraud provision in an overall statute with numerous subsections. *Id.* at 223 ("Where Congress includes particular language in one section of the statute but omits it in another section of the same act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion.") (citation omitted). We focused on the fact that subsections (M)(i) and (M)(ii) were "interrelated and closely positioned," i.e., they were adopted at the same time and appeared within the same subsection within a statute that contained twenty-one separate subsections specifying aggravated felonies. *Id.* In that context, Congress's choice to list the crime of tax evasion as a separate subsection led to our conclusion that tax evasion was the only removable tax-related aggravated felony. *Id.* at 224. Finally, we stated that the history and structure of the criminal tax laws supported the interpretation that Congress intended to single out tax evasion as the only tax crime that could be a removable offense. *Id.* We concluded that "in enacting subsection (M)(ii), [Congress] intended to specify tax evasion as the only deportable tax offense; it follows that it did not intend subsection (M)(i) to cover tax offenses." *Id.*

This case, however, is different from *Lee* primarily because, as demonstrated above, there exist offenses "related to" forgery which do not contain as an essential element an intent to defraud or deceive. Unlike subsection (M)(ii), subsection (R) does not define offenses that would otherwise fall entirely

16

within (M)(i): the language of subsection (R) is much broader than that of subsection (M)(ii), and unlike (R), (M)(ii) was listed in the same subsection as (M)(i), the general fraud aggravated felony. The fact that there are numerous federal and state statutes "related to" forgery that do not have as an essential element an intent to defraud or deceive shows that subsection (R) is not a subset of subsection (M)(i). While there are offenses that fall under subsection (R) but not subsection (M)(i), section 510(a)(2) offenses are not among them. Section 510(a)(2) offenses can constitute aggravated felonies under either subsection (M)(i) or subsection (R) because of the broad manner in which Congress drafted both subsections.[7] As such, subsection (R) is not the sole avenue to charge Bobb with removability for his conviction under section 510(a)(2).

2.

The legislative history of subsection (R) also supports the IJ's determination. Subsection (R) was enacted in order to increase the number of "aggravated felonies" that could be charged as removable offenses. Subsection (R) was added to

---

[7]For example, all section 510(a)(2) offenses have as an element the specific intent to defraud and thus fall within subsection (M)(i)'s broad definition of an offense that "involves fraud or deceit" as long as the loss to the victim exceeds $10,000. In addition, all section 510(a)(2) offenses have as an element that the check passed by the defendant "bore a forged or falsely made endorsement" and thus come within the ambit of subsection (R) if the term of imprisonment is at least one year.

17

section 1101(a)(43) as part of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-32, § 440(e)(8), 110 Stat. 1214.[8]  The House Report submitted in connection with that legislation confirms Congress' intent to add several crimes to the definition of "aggravated felony":

> One of the steps the Committee recommends to accomplish the . . . goal [of strengthening the government's ability to efficiently deport aliens who are convicted of serious crimes] is to add several crimes to the definition of "aggravated felony."  Aliens who commit aggravated felonies can be deported from the United States when they complete their incarceration.  Many of the crimes added to this

---

[8]Subsection (R) was originally drafted as part of the Criminal Alien Deportation Improvements Act of 1995, H.R. 668, 104th Cong. (1995), a House bill that was never enacted. Subsection (R) was eventually enacted, however, as part of the AEDPA.  Subsection (R) originally defined an "aggravated felony" as an offense "related to . . . forgery . . . for which a sentence of 5 years' imprisonment or more may be imposed." Later in 1996, Congress amended subsection (R) in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, § 321(a)(10), 110 Stat. 3009, to strike the language "for which a sentence of 5 years' imprisonment or more may be imposed" and to insert in its place the current language of "for which the term of imprisonment is at least one year."

18

list are those often committed by persons involved in organized immigration crime. The crimes added to this definition include: certain gambling offenses; crimes involving transportation of person[s] for the purpose of prostitution; alien smuggling; counterfeiting, forging, or trafficking in immigration and other documents; and trafficking in stolen vehicles.

In adding crimes to the list, effort was made to ensure that the overall reach of the definition would be consistent with the sentencing guidelines established by the United States Sentencing Commission. With only certain limited exceptions, the Committee attempted to ensure that all of the crimes defined as aggravated felonies carry a base offense level of at least 12. These minimums have been selected to ensure that only the most serious crimes, or the more serious convictions of lesser crimes, render the alien deportable.

H.R. Rep. No. 104-22, at 7 (1996).

The broad language used in subsection (R), combined with the legislative history, confirms that Congress did not intend to hamstring the INS's ability to bring enforcement proceedings, but rather to increase the number of removable offenses. A different interpretation simply makes no sense. Congress is presumed to have understood that "forgery offenses" historically have had as an essential element an intent

19

to defraud or deceive, and thus that they fell under subsection (M)(i). But there was a gap in the existing language of subsection (M)(i), because it did not cover: (1) the sale of forged or stolen documents to middlemen; and (2) other offenses that are related to forgery, but which do not contain as an essential element an intent to defraud or deceive. As the IJ correctly noted in his opinion, it simply would make no sense "to remove the immigration consequences from offenses that previously were considered aggravated felonies." (App. 5.) In this respect, Congress's choice to use the phrase "related to" was deliberate because it evidenced an intent to categorize as "aggravated felonies" crimes which previously were not covered by section 1101(a)(43). (*See* App. 6.) ("One section, INA § 101(a)(M)(i), was enacted to deport individuals engaging in deceptive conduct causing great loss of money, and the other section, INA § 101(a)(43)(R) was enacted to deport those whose crimes were serious enough to merit one year of imprisonment.").

3.

An additional reason for finding that the INS could proceed under either subsection (M)(i) or (R) is that Bobb's argument – that because he may be removed solely under subsection (R) he therefore cannot be removed under subsection (M)(i) – has no analogue in criminal law. It is not uncommon that federal criminal statutes partially overlap, permitting prosecutors to bring criminal charges under either one section or the other. As the Supreme Court recognized, there are sometimes partial redundancies in federal criminal statutes "both as to the conduct they proscribe and the individuals they reach."

20

*United States v. Batchelder*, 442 U.S. 113 (1979). In *Batchelder*, the Court rejected the argument that a defendant convicted under one overlapping statute could be imprisoned to no more than the maximum term specified under another overlapping statute.[9] *Id.* at 118. In so doing, the Court determined that each statute, "in conjunction with its own sentencing provision, operates independently of the other." *Id.* The Court explained that it was "'not enough to show that the two statutes produced differing results when applied to the same factual situation' . . . [r]ather, the legislative intent to repeal [one of the statutes] must be manifest in the 'positive repugnancy between the provisions.'" *Id.* at 122 (citations omitted). The Court found that the differing penalty provisions were "fully capable of coexisting because they apply to convictions under different statutes." *Id.* Applying the longstanding principle that "when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants," the Court upheld the defendant's conviction and sentence. *Id.* at 123-26. *See Berra v. United States*, 351 U.S. 131 (1956) (upholding the

---

[9]The defendant, a convicted felon, was convicted of receiving a firearm that had traveled in interstate commerce, in violation of 18 U.S.C. § 922(h), which carried a maximum term of imprisonment of five years. *See* 18 U.S.C. § 924(a). Another statutory provision of the same act (The Omnibus Crime Control and Safe Streets Act, 82 Stat. 197 (1968)), 18 U.S.C. App. § 1202, also prohibited a felon from possessing a firearm, although the maximum term of incarceration under that section was two years' imprisonment.

defendant's felony conviction when misdemeanor tax evasion statute would have proscribed identical conduct and imposed a lesser penalty), *superseded by statute on other grounds as stated in Sansone v. United States*, 380 U.S. 343, 350 n.6 (1965).

Similarly, this Court recognized in *United States v. Williams*, 850 F.2d 142 (3d Cir. 1988), the possibility that a defendant could be prosecuted for the same conduct under either 18 U.S.C. § 510(a)(2) or (b). In *Williams*, we noted that section 510 was enacted to close several loopholes that had existed for forgery-related prosecutions. Under existing law, the government could not prosecute a defendant for forgery offenses involving United States Treasury instruments. In addition, there was no avenue prior to the enactment of section 510(b) to prosecute a defendant "if a properly endorsed check is stolen and then cashed or if the thief sells the check without endorsing it." *Id.* at 147. The defendant argued that section 510(a)(2) was superfluous because many offenses chargeable under section 510(a)(2) could also be charged under section 510(b). We rejected that argument, noting that "no matter how 18 U.S.C. § 510 is read there will be redundancies within its subsections." *See id.* ("For example, under any conceivable reading of 18 U.S.C. § 510 a thief who steals a treasury check and then endorses it and, representing it as genuine, cashes it with an innocent merchant, can be prosecuted under either subsection (a)(2) or subsection (b) for the transaction."). Despite these partial redundancies, we concluded that the subsections were distinct and covered separate conduct:

> [T]here are differences between the subsections though undoubtedly their provisions

22

overlap. Thus, 18 U.S.C. § 510(b) deals with validly endorsed or unendorsed instruments and section 510(a)(2) does not. On the other hand the latter but not the former section mentions attempts. In any event if the subsections are to be mutually exclusive, though we see no reason why they should be, Congress will have to rewrite them as we cannot. . . .

[T]he principle novelties in 18 U.S.C. § 510 were in subsection (b), which closed the loophole in section 495 in favor of the thief who stole an endorsed check or sold the check without enclosing it, and in subsection (c) which deals with penalties. Thus in subsection (b) Congress added a provision without a comparable antecedent in section 495. But at the same time it enacted section 510(a)(2) which traversed ground already covered by section 495. In the circumstances it is not surprising that there is duplication. Indeed, . . . 18 U.S.C. § 510 itself partially repeats provisions from section 495.

*Id.* Similar considerations in the present case support a conclusion that Congress did not intend that Bobb could only be charged as removable under subsection (R).

The cases cited by Bobb for the proposition that the specific statutory provision trumps the general provision all dealt with statutes that were coextensive with one another, or where Congressional intent was clear that a specific provision

23

trumped a general one. For example, the Supreme Court held in *Busic v. United States*, 446 U.S. 398 (1980), *superseded by statute on other grounds as stated in United States v. Gonzales*, 520 U.S. 1, 10 (1997), that the defendant could not be sentenced under the statutory enhancement provision in 18 U.S.C. § 924(c) (providing an enhanced penalty for using a firearm in connection with a crime of violence) where the predicate offense of assaulting a federal officer with a dangerous weapon contained its own specific statutory enhancement. The Court determined that the more specific enhancement provision in the predicate offense trumped the general enhancement provision in section 924(c) when both enhancement provisions covered the same conduct. Thus, the government was precluded from proceeding under section 924(c).

Similarly, in *United States v. LaPorta*, 46 F.3d 152 (2d Cir. 1994), the defendants set fire to a government vehicle provided by a confidential informant in an effort to obtain insurance proceeds. The defendants were charged, *inter alia*, under 18 U.S.C. § 844(h)(1) with using an explosive device to commit a felony. The defendants argued that the charge should be dismissed because their conduct was covered solely by section 844(f), which prohibits the destruction of government property. The Second Circuit agreed, determining that the specific statute relating to the destruction of *government property* necessarily controlled the broader statute because otherwise section 844(f) would have no practical effect. According to the court, a contrary interpretation would render section 844(f) superfluous because the government would always have the ability to charge under the general offense, and

would do so in most cases do so because it contained more stringent penalties. *Id.* at 156.

The distinction between the decisions in *Batchelder* and *Williams* and the decisions in *Busic* and *LaPorta* is this: the government is required to proceed under a specific statute only if proceeding under a general statute would render the specific statute superfluous. A statute is rendered superfluous only if a general statute can cover every possible circumstance covered by the specific. *See*, *e.g.*, *Lee*, 368 F.2d at 222-24. Under those circumstances, the general statute must give way to the specific. In this case, subsections (M)(i) and (R) are not coextensive. The government was entitled to charge Bobb as removable under either subsection because not all conduct covered by subsection (R) is covered by subsection (M)(i).

For these reasons, we conclude that the IJ did not err in finding that the government was entitled to charge Bobb as removable under subsection (M)(i).

B.

Apart from whether the government is entitled to charge Bobb under subsection (M)(i) remains an equally important question: whether the government – whichever provision it chooses – must meet the requirements of *both* subsections (M)(i) and (R) to remove Bobb from the United States as an aggravated felon. The answer to this question depends upon whether Bobb's underlying conviction qualifies as a "hybrid offense" as set forth in our recent opinion in *Nugent v. Ashcroft*, 367 F.3d 162 (3d Cir. 2004).

25

The alien in *Nugent* was convicted in Pennsylvania of the crime of theft by deception for depositing a bad check in the amount of $4,831.26, and sentenced to a term of imprisonment of six to twenty-three months. The BIA ordered Nugent removed under 8 U.S.C. § 1101(a)(43)(G), which defines as an aggravated felony a "theft offense . . . for which the term of imprisonment [is] at least one year." Nugent argued that his conviction for theft by deception was not a "theft offense," but rather was a fraud offense covered by subsection (M)(i). As in the present case, the distinction was important for Nugent: he was not removable under subsection (M)(i) because his offense involved a loss to the victim of less than $10,000. If subsection (G) applied, however, he was removable because he was sentenced to a term of imprisonment of at least one year.

In addressing Nugent's arguments, we first had to determine the scope of subsection (G). We concluded that a "theft offense" under subsection (G) could be defined as "a taking of property or an exercise of control over property without consent." *Id.* at 174. We found that, given this broad definition, Nugent's bad check transaction was a "theft offense." We held, however, that this did not end our inquiry:

> The sole question for decision is whether within the purview of Pennsylvania's theft by deception statute, Section 3922, Nugent's conviction for passing a bad check represents "an offense involving fraud or deceit" under 8 U.S.C. § 1101(a)(43)(M)(i), notwithstanding that it also constitutes a "theft offense" under 8 U.S.C. § 1101(a)(43)(G). If we decide that Nugent's

26

conviction is "an offense that involves fraud or deceit as well as "a theft offense," then to qualify as an aggravated felony under the INA it must meet the requirements of Section 1101(a)(43)(M)(i), loss to the victim of more than $10,000, in addition to Section 1101(a)(43)(G), term of imprisonment of at least one year.

*Id.* at 174-75. After further analysis, we determined that Nugent's theft by deception offense also fell within the purview of subsection (M)(i) because it required the Commonwealth to prove fraud and deceit. *Id.* at 178.

We employed principles of logic to reach the conclusion that the INS was required to prove the elements of both subsection (G) and subsection (M)(i). The terms employed to define the covered offenses were key to our determination. Subsection (G) is limited to "theft offenses," while subsection (M)(i) applies more broadly to an "offense that involves fraud or deceit." *Id.* at 175. We found this distinction significant, concluding that "[Subsection] (M)(i) clearly applies to those 'theft offenses' under Subsection (G) that are anchored on 'fraud or deceit'":

[T]he logicians teach us that a term such as "an offense" as contained in Section 1101(a)(43)(M) or a "theft offense" as in Section 1101(a)(43)(G), is said to have both a quality and a quantity. Here we are concerned with quantity. The quantity of a proposition is universal or particular according to whether the proposition

27

refers to all members of a class or to some members of the class designated by its subject term. In the case of (M) we have a term representing all members of a class – "an offense."

When a term contains no restrictions (as in (M) – "an offense"), logicians refer to it as "distributed," and the proposition of which it is the subject as "universal" and is a class. In the universe of offenses set forth in Section 1101(a)(43), however, the term "theft offense" is predicated on some, but not all, of the distributed term "an offense" in (M), and is therefore considered as "undistributed" and is a subclass. The proposition of which it is the subject is denoted as a "particular." *See* Ruggero J. Aldisert, Logic for Lawyers: A Guide to Clear Legal Thinking 57-59 (3d ed. 1997); Irving M. Copi, Introduction to Logic 173 (7th ed. 1986). Expressed in less technical phrasing: "All theft offenses are offenses, but not all offenses are theft offenses."

We are taught that conclusions in all reasoning, including legal reasoning, deductive or inductive analogy, "derive[ ] their validity from the axiom known as the dictum *de omni et nullo*, which states: "What is true of the universal (or class) is true of the particular (or subclass)." . . . The axiom may also be stated as: If every member

28

of a class has (or does not have) a certain property, and if certain individuals are included in that class, then these individuals have (or do not have) a certain property.

*Id.* at 176 (underlined emphasis added).

With this background in mind, we set forth the following syllogisms to govern the analysis:

Depriving another of property by fraud or deceit is an offense (M).  (Universal)

The offense of theft by deception deprives another of property by theft (G). (Particular)

Therefore, the offense of theft by deception is an offense under (M) and (G).

****

The offense of theft by deception is an offense under (M) and (G).

A violation of Pennsylvania's theft by deception statute, § 3922, is an offense of theft by deception.

Therefore, a violation of Pennsylvania's theft by deception statute, § 3922, is an offense under (M) and (G).

29

*Id.* at 177. Applying this framework, we held that Pennsylvania's theft by deception statute, which qualified under subsection (G) as a particular "theft offense," also came within the universal (or class) nature of "an offense" bottomed on fraud or deceit under subsection (M)(i). Following the maxim that "what is true of the universal (or class) is true for the particular (or subclass)," we concluded that the INS had to meet the requirements of subsection (M)(i). *Id.* at 179 ("Because the particular Pennsylvania statute is designed entirely on all-embracing concepts of fraud or deceit . . . it is precisely the particular type of theft contemplated in the universal class of offenses set forth in the fraud or deceit Subsection (M)(i). We therefore apply the axiom . . . what is true of the universal (or class) is true for the particular (or subclass) in § 1101(a)(43)(G)."). *See also id.* at 180 (Rendell, J. concurring) ("[O]nly where an offense is a hybrid – as I submit theft by deception is – and the aggravated felony classifications contain two distinct, clearly applicable tests, should we conclude that both must be fulfilled in order for the offense to qualify as an aggravated felony.").

The clearest reading of *Nugent* is that it is restricted to classificational schemes in which one classification is entirely a subset of another. Under such circumstances, we infer a legislative intent to require proof of all the elements of the universal classification. The logical reasoning on which *Nugent* rests, however, cannot support a similar result for separate universal classifications which intersect, but which have separate and independent elements. In that situation, which we have in this case, satisfaction of the separate criteria of either

30

universal classification will suffice to establish the predicate defined by the classification.

For example, if we were bound in this case by the proposition that "all forgeries are frauds," in order to establish aggravated felony status based upon a predicate forgery conviction (the particular), the government would have to satisfy all the elements of the fraud conviction (the universal). Here, unlike in *Nugent* where we noted that the term "theft offense" defined a class that was entirely a subset of the larger class "offense," the class "offense related to forgery" is not entirely a subset of the class "offense involving fraud." Rather, an "offense related to forgery" is an independent, universal class that intersects with the "offense involving fraud" class. Congress made the intentional decision in subsection (R), as it did with fourteen different offenses set forth in section 1101(a)(43), to use the broader term "offense." *See id.* at 175. Thus, *Nugent*'s holding that the universal must be proven if it subsumes the subclass is inapplicable to this case. Bobb's underlying conviction is not a "hybrid offense," and the government was entitled to charge him as removable solely under subsection (M)(i).

## C.

Our only remaining question is whether the offense of conviction qualifies as an aggravated felony under subsection (M)(i). Bobb was convicted under 18 U.S.C. § 510(a)(2) of passing, uttering, and publishing a United States Treasury check in the amount of $13,277 which contained a forged endorsement. That statute provides as follows:

31

(a) Whoever, with intent to defraud--

(2) passes, utters, or publishes, or attempts to pass, utter, or publish, any Treasury check or bond or security of the United States bearing a falsely made or forged endorsement or signature; . . .

shall be fined under this title or imprisoned not more than ten years, or both.

18 U.S.C. § 510(a). The Government is required to prove beyond a reasonable doubt the following four elements to obtain a conviction under section 510(a)(2): (1) that the defendant passed or attempted to pass a United States Treasury Check; (2) that the check bore a forged or falsely made endorsement; (3) that the defendant passed the check with intent to defraud; and (4) that the defendant acted knowingly and willfully. *United States v. Rosario*, 118 F.3d 160, 163 (3d Cir. 1997). Section 510(a)(2) explicitly contains as an element an "intent to defraud," which qualifies Bobb's conviction as a removable offense under subsection (M)(i). Moreover, Bobb pleaded guilty to an indictment which confirms that the amount of loss was greater than $10,000.[10] Therefore, Bobb's conviction

_____

[10]Bobb's indictment stated as follows:

On or about December 18, 1995, in the Eastern District of Pennsylvania, defendant ALVIN NETHANIEL BOBB did knowingly and with intent to defraud, pass, utter, and publish a United

32

satisfied the essential requirements for removability under subsection (M)(i).

For these reasons, we conclude that the BIA did not err in holding that Bobb was removable, and we will accordingly deny his petition for review.

IV.

Congress intentionally used broad language when it drafted subsections (M)(i) and (R), which precludes a finding that subsection (R) is the sole vehicle for removing Bobb for an offense committed under 18 U.S.C. § 510(a)(2). The legislative history supports the conclusion that Congress intended to increase the number of crimes which constitute "aggravated felonies," not to provide a loophole through which an offense that could have previously constituted an aggravated felony may no longer be charged as such. In addition, Bobb's argument that he is removable only under subsection (R) has no analogue in the criminal law context. Finally, Bobb's offense is not a "hybrid offense" as set forth in *Nugent*.

---

> States Treasury check . . . in the amount of $13,277 dated December 14, 1995 bearing a falsely made and forged endorsement. In violation of Title 18, United States Code, Section 510(a)(2).

(App. at 47 (emphasis added).)

33

As a result, we agree with the BIA that Bobb committed an "aggravated felony" and will accordingly deny Bobb's petition for review.

ALDISERT, Circuit Judge, dissenting.

Alvin Bobb entered the United States as a legal permanent resident in 1991 on the petition of his mother, who is a United States citizen. His wife is a United States citizen. His two children—a 15-year-old son and an eight-year-old daughter—are also both United States citizens. He has been convicted of one crime: forging a United States treasury check. He was sentenced to, and has served, four months in prison for that crime. He concedes that he is removable under INA § 237(a)(2)(A)(i) for having committed a crime of moral turpitude, but contests the Secretary's determination that his crime qualifies as an "aggravated felony." The consequences of such a designation are harsh: immediate deportation, ineligibility for discretionary relief from removal, a 20-year-prohibition on reentry, and no judicial review. *See* 8 U.S.C. §§ 1229(b), 1182(a)(9)(A)(ii) & 1252(a)(29)(C).

I agree with the majority that not all offenses "relating to . . . forgery" are "offenses involving fraud or deceit" and therefore subsection (R) is not a subclass of subsection (M)(i). Maj. Op. at 17. I also agree with the majority that, in most circumstances, "the government is required to proceed under a specific statute only if proceeding under a general statute would render the specific statute superfluous." Maj. Op. at 25. This rule is rooted in the reality that there are often partial redundancies in federal criminal statutes "both as to the conduct they proscribe and the individuals they reach," and prosecutors are entrusted with the discretion to choose which statute to apply. *United States v. Batchelder*, 442 U.S. 113, 124 (1979); *see also id.* ("Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion.").

In *Batchelder*, to reuse the majority's example, the Supreme Court rejected the argument that a defendant convicted under one overlapping statute could be imprisoned for more than the maximum term specified in another overlapping statute. *Id.* at 118. The Court determined that each statute, "in conjunction with its own sentencing provision, operated independently of one another," *id.*, and that both could be applied to the same factual situation unless "the legislative intent to repeal" one of the statutes is "manifest in the 'positive repugnancy between the provisions.'" *Id.* at 122.

35

My difficulty with the majority's approach is that 8 U.S.C. § 1101(a)(43) is not a criminal statute and subsections (R) and (M)(i) do not "operate[] independently" of one another, nor do they have their "own sentencing provision[s]." *See id.* Indeed, subsections (R) and (M)(i) do not independently proscribe any type of conduct—they simply *define* what constitutes an "aggravated felony." Many cases support the notion that prosecutors can choose between applicable criminal and civil statutes, but my research has not uncovered any case permitting *administrative agencies* to choose between two definitions within the *same* subsection of the *same* statute. Moreover, neither the statutory text nor the legislative history evince any intent by Congress to vest the Secretary with the discretion to pick and choose between two definitions of the term "aggravated felony," applying whichever test is easiest to satisfy under the facts of the case. Accordingly, I respectfully dissent.

The starting point for my analysis is the recognition that prior to the 1996 amendment most forgery offenses over $10,000 would have qualified under subsection (M)(i). In 1996, however, Congress amended the aggravated felony classifications and added subsection (R). *See* Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-32, § 440(e)(8), 110 Stat. 1214. Subsection (R) specifically enumerates several offenses, including those relating to commercial bribery, counterfeiting, trafficking in stolen vehicles, and *forgery*. It cannot reasonably be disputed that

36

Bobb's crime is an "offense relating to [] forgery," and therefore falls under subsection (R).

Yet the Government argues, and the majority agrees, that because subsection (R) is not a subclass of subsection (M)(i), Congress intended the Secretary to be able to choose between the two depending upon the facts of each case. I cannot accept this proposition. Regardless of whether subsection (R) is a subset of subsection (M)(i), there can be little doubt that subsection (R) is more specifically applicable to the crime of forgery than subsection (M)(i). These are not separate criminal statutes. They are statutory definitions of the term "aggravated felony." With few exceptions, Congress appears to have consciously avoided redundancies in the aggravated felony classification. In the one case where we found a redundancy, we held that Congress intended the more specific classification to apply. *See Ki Se Lee v. Ashcroft*, 368 F.3d 218, 224 (3d Cir. 2004) ("[I]n enacting subsection (M)(ii), [Congress] intended to specify tax evasion as the only deportable tax offense; it follows that it did not intend subsection (M)(i) to cover tax offenses.").[11]

_____

[11] Although I agree with the majority that *Ki Se Lee* does not carry the day for Bobb, it is nonetheless supportive. Notably, the majority in *Ki Se Lee* acknowledges that, at least theoretically, not all instances of tax evasion involve fraud or deceit, stating, rather cryptically: "We have considered the government's contention that there could be a case where a conviction for tax evasion would not involve fraud or deceit, in

37

In this context, it makes little sense to look to broad classifications (such as crime of violence or crime involving fraud or deceit) when Congress has specifically considered the crime at issue and set forth a particular test.

The Government's response, which the majority adopts, is twofold. First, it argues that Congress' sole intention in adding subsection (R) was to bring forgery-related crimes not otherwise covered by subsection (M)(i) (or other aggravated

---

which case subsection (M)(ii) would exist simply to catch any cases not covered by subsection (M)(i), but the government has not identified, and we are unable to envision, what that case might be." *Id.* at 223. Judge, now Justice, Alito, dissented on this issue, stating:

> Neither "fraud" nor "deceit" is mentioned in the statute as a necessary element of tax evasion. The statute applies to the willful attempt "in any manner to evade or defeat any tax imposed by this title or the payment thereof." 26 U.S.C. § 7201. Likewise, leading cases interpreting this language do not hold that fraud or deceit is an element of the offense. . . .

*Id.* at 227 (Alito, J., dissenting) (emphasis omitted). It therefore appears that the majority in *Ki Se Lee* accepted that one classification need not render another wholly superfluous for the more specific to take precedence.

38

felony classifications) into the aggravated felony rubric. Second, it contends that any other interpretation would defeat Congress' intent to increase the list of aggravated felonies for which an alien can be deported." *See* H.R. Rep. No. 104-22, at 7 (1996).

There is no support for the first proposition. *See Ki Se Lee*, 368 F.3d at 224 n.8 (observing that, "[f]or the most part, [the 1996 additions to the aggravated felony definitions] were adopted without any discussion of their particular purpose"). It is unmistakably apparent that the crime of forgery is an "offense related to forgery," and I do not agree that the "relating to" language, which is found throughout § 1101(a)(43), signifies an exclusive intent to focus on offenses "relating to" forgery that are not in fact forgeries. Moreover, I do not agree with the majority that there was no need to revisit the test applicable to "forgery offenses." *See* Maj. Op. at 19-20 ("Congress is presumed to have understood that 'forgery offenses' historically have had as an essential element an intent to defraud or deceive, and thus that they fell under subsection (M)(i)."). Although "forgery offenses" historically have had an intent to defraud or deceive as an essential element, some modern state statutes do not, *see* 36 Am. Jur. 2d Forgery § 26 (noting that fraudulent intent is an element of most state statutes, although some allow intent to injure as well), and Congress has indicated that the federal crime of forgery need not necessarily include as an element the intent to defraud. *See Drakes v. Zimski*, 240 F.3d 246, 249 (3d Cir. 2001) ("[I]n Congress' view, it may well be

39

possible to commit 'forgery' without 'fraud,' or at least fraud in the ordinary sense of misrepresentation for material gain."); *see also* 18 U.S.C. § 510(b) ("Whoever, *with knowledge* that such Treasury check or bond or security of the United States is stolen . . ..") (emphasis added). I therefore cannot accept that it "makes no sense" for Congress to have established a new test for all forgery-related crimes.

The Government's second contention—that Congress intended to expand the number of aggravated felonies—is irrelevant. My interpretation does not narrow the number of aggravated felonies; I simply propose that we apply the test found in the subsection specifically discussing crimes relating to forgery. Indeed, by many measures this is an easier test for the Secretary, as it removes the high minimum loss requirement and permits removal for relatively short sentences. Moreover, the legislative history is equally plain that Congress intended the 1996 amendment "to ensure that only the most serious crimes, or the more serious convictions of lesser crimes, render the alien deportable." *See* H.R. Rep. No. 104-22, at 7 (1996). Accordingly, that Congress may have intended to increase the number of aggravated felonies does nothing to help us resolve whether Bobb's crime is sufficiently serious to warrant removal.

In sum, I simply cannot escape the commonsense conclusion that Congress intended subsection (R)—the only classification that specifically mentions the crime of forgery—rather than subsection (M)(i), which does not mention

40

it, to apply to the crime of forgery. Moreover, although I conclude that there is no ambiguity in subsection (R), to the extent that one might so view it, I would apply the "'longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien.'" *Ki Se Lee*, 368 F.3d at 225 (quoting *INS v. Cardoza-Fonseca,* 480 U.S. 421, 449 (1987)).

Whether this result would constitute an "implied repeal" of subsection (M)(i), as the Government suggests, is purely a question of semantics. I am not suggesting that subsection (M)(i) would not apply if Bobb's crime were not covered by subsection (R). What I am suggesting is that, in determining whether a crime is an aggravated felony, we should—to carry out Congress's intent—apply the *most analogous* aggravated felony classification, to the extent that there is one.

I would therefore hold that, whatever the practice prior to 1996, forgery is now a removable offense only if it qualifies under the test set forth in subsection (R). I find the majority's contrary conclusion—that subsection (R) alone should apply to forgery-related crimes that are not exactly forgery while the Secretary can pick between the subsections (M)(i) and (R) when it is a forgery-related crime that is forgery—both counterintuitive and problematic. Perhaps Gertrude Stein said it best: "A rose is a rose is a rose." A forgery is a forgery is a forgery.

41

* * *

Accordingly, with utmost deference and respect, I dissent. I would grant the petition to review and remand to the BIA with a direction to utilize § 1101(a)(43)(R) in determining whether Alvin Bobb committed an aggravated offense.[12]

---

[12] Because I believe that with the adoption of (R), forgery may no longer be an offense under (M)(i), the teachings of *Nugent v. Ashcroft,* 367 F.3d 162 (3d Cir. 2004), are not applicable to this case.